WELGE v. JENKINS. (No. 5681.)

(Court of Civil Appeals of Texas. Austin. March 14, 1917. Rehearing Denied May 23, 1917.)

1. BREACH OF MARRIAGE PROMISE ⊂=28 — DAMAGES.

For breach of marriage promise, damages are recoverable for plaintiff's mortification or shame, caused by her becoming the mother of an illegitimate child through her seduction by defendant.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 40–43.]

2. APPEAL AND ERROR ⊂=216(2)—REQUESTED INSTRUCTIONS—ERRONEOUS REQUESTS.

A case will not be reversed when there is no affirmative error in charges given, merely because of an omission to state the law with more fullness and accuracy, unless the party complaining of such omission seeks to have it supplied by a requested instruction properly framed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 628.]

3. BREACH OF MARRIAGE PROMISE ⊂=28 — DAMAGES FOR RESPONSIBILITY FOR SUPPORT OF ILLEGITIMATE CHILD.

In awarding damages for breach of marriage contract, the jury may consider the fact that because of defendant's breach the plaintiff will be compelled to support a child of which defendant is the father; such fact being a part of the condition in which plaintiff is left by such breach.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 40–43.]

4. BREACH OF MARRIAGE PROMISE ⊂=7—CONTRACT OF MARRIAGE—IMMORAL CONSIDERATION.

Where a valid marriage contract is entered into prior to sexual intercourse, and such intercourse was not the sole consideration therefor, the marriage contract is not void on account of an immoral consideration.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 3.]

Appeal from District Court, Hays County; Frank S. Roberts, Judge.

Suit by Dora Jenkins against Herman Welge. From judgment for plaintiff, defendant appeals. Affirmed.

E. M. Cape, of San Marcos, and Ramsey, Black & Ramsey, of Austin, for appellant. Will G. Barber and R. E. McKie, both of San Marcos, for appellee.

KEY, C. J. This suit was filed by the appellee, Dora Jenkins, against the appellant, Herman Welge, in the district court of Hays county on January 4, 1915. In the plaintiff's first amended original petition filed September 30, 1915, and upon which she tried her case, she alleged that, on or about July 1, 1914, she and the defendant mutually agreed and promised to marry each other, and that the defendant then and there agreed to marry her during the month of October, 1914. She further alleged that she truly loved the defendant, and was ready and willing at all times, after she had so promised to marry the defendant, to marry him, but that, notwithstanding the said promises, the said defendant failed to keep the same, and breached his agreement to marry her in the month of October, 1914, and over her protest insisted upon postponing the marriage until about December 1, 1914, and that it was then agreed that they should be married on or about December 1, 1914. She further averred that defendant had wholly failed and refused to comply with his said promises and agreement, and had failed and refused to marry her. Plaintiff averred, in the same connection, that after their first engagement, and during the month of July, 1914, defendant seduced her, and that by reason thereof she became pregnant, and that since the filing of her original petition a child has been born to her, of which child the defendant was the father. As tending to show the damages suffered by her in addition to the seduction and resulting pregnancy above averred, plaintiff set up: (a) That defendant was a man of considerable property, owning about 200 acres of land, together with a large number of cattle, and was a man of good social standing, and that a marriage with him would have been advantageous to the plaintiff; (b) that the act of the defendant in refusing to keep his promise to marry the plaintiff has caused her great mental and physical pain and great distress and humiliation; (c) that the wrongful breach of his promise by the defendant, together with the wrongful seduction of the plaintiff, caused her great public disgrace and consequent humiliation; (d) further, that by reason of

the wrongs of the defendant, plaintiff would become a social outcast, and would, all of her life, suffer great mental and physical pain and anguish, distress and humiliation, and will, in the natural course of things, be burdened with the support and care of the defendant's illegitimate child, of which she is the mother; (e) that by reason of said breach of promise, seduction, etc., she had been deprived permanently of an opportunity to marry any one else. Plaintiff further alleged that:

"By reason of the wrongful breach of his said promises and agreements to marry her, and by reason of his seduction of her, and the consequences thereof, all as herein alleged and all under the circumstances herein alleged, she has been and is damaged in the true and full sum of $15,000"

—for which she filed this suit and prayed judgment. Defendant answered as follows: First, general demurrer; second, special exceptions; and, third, general denial. The case was tried before a jury, and, the jury having returned a verdict in favor of the plaintiff for $7,500, the court rendered judgment for that amount. Appellant thereupon filed his original and amended motions for new trial, and said amended motion, having been duly considered, was overruled by the court, to which the defendant excepted and gave notice of appeal, and thereafter filed his appeal bond, bills of exception, and statement of facts, and in all things duly prosecuted his appeal, and the cause is now before this court for review upon the assignments of error of appellant.

### Opinion.

While appellant has presented to this court several other questions for decision, and while they have all been considered and are decided against him, this opinion will be limited to a brief discussion of two questions only, and these are:

1. In different forms and under several assignments of error, appellant contends that the trial court committed error: (1) By telling the jury in the main charge that they might look to the pleadings for the nature and particulars of the plaintiff's demand and the defendant's answer thereto; (2) in refusing a requested charge by which the jury would have been instructed "that under no circumstances can any damages be assessed for or on account of the support, maintenance, and education of the child, nor can any damages be assessed or considered on account of the mortification or shame of plaintiff by reason of the fact that she is the mother of an illegitimate child, and this without reference to what you may believe as to who was the father of said child"; and (3) that the court erred in not sustaining appellant's exceptions to appellee's petition, for the reason that the same, taken as a whole, is a suit on an alleged breach of promise to marry, a suit in the nature of an

action for seduction, and a suit in the nature of a proceeding in bastardy, whereby, in substance, damages are sought for breach of promise of marriage, for seduction, and also in effect to charge the defendant with the care and support of the plaintiff's illegitimate child.

In Daggett v. Wallace, 75 Tex. 352, 13 S. W. 49, 16 Am. St. Rep. 908, it was held by our Supreme Court that in a suit to recover damages for a breach of promise of marriage, a plaintiff might allege and prove that, after such promise of marriage she had been seduced by the defendant, and that fact might be considered in estimating the damages.

In Huggins v. Carey, 149 S. W. 390, the Ft. Worth Court of Civil Appeals, citing with approval Daggett v. Wallace, among other things, said:

"It cannot be fairly ascertained to what extent the plaintiff is damaged by the breach of the contract or promise without considering the condition in which she is left by the defendant's conduct which is complained of."

And in considering whether or not the verdict was excessive, this language was used:

"Neither by pleading nor his evidence did the appellant attempt to show that appellee prior to his association with her was without the crowning glory of all womanhood, and by well-settled rule of law, therefore, we are required to indulge the presumption that she was of good moral character. * * * Also, as stated, appellee testified that appellant had won her love, confidence, and trust. These were shattered, and appellee was left loveless and penniless, with disappointed hopes, with tarnished character, and with a nameless girl child to care for. Who better than the jury can measure, so far as they can be measured by dollars and cents, the magnitude of the misfortune, the humiliation, the depth of despair naturally arising from such a situation and fate? We confess that we are not able to better do so, even if permitted by law."

The overwhelming weight of authority supports the proposition that, in cases of this kind, for the purpose of showing the extent of the injury and the amount of damages which should be awarded, the plaintiff may allege and prove that, on account of the defendant's promise of marriage, she yielded to his solicitation for sexual intercourse. 2 Sedg. Dam. (9th Ed.) § 639, and authorities there cited, and note to Wrynn v. Downey, 4 L. R. A. (N. S.) 616. In the text-book cited, it is said:

"Sec. 639.—*Aggravation. Seduction under Promise of Marriage.* Circumstances which show that the injury was particularly serious may be shown in aggravation of damages. Thus it may be shown, in order to increase the damages, that the plaintiff was seduced by the defendant under promise of marriage, and that she was delivered of a bastard child. Such seduction must be alleged in the pleadings. It is not the mere fact of seduction that aggravates the damages, but seduction which results from the promise. Thus seduction before the promise of marriage cannot be shown; nor can loss of time and medical attendance in giving birth to a child, nor the care and maintenance of the child. Nor can disease supervening on the intercourse be shown. In an action for breach of promise, it was held by the Supreme Court of Massachusetts [Sherman v. Rawson, 102 Mass. 395] that, although it might be true that damages for the

seduction, as a distinct ground of action, could not be added to the damages to which the plaintiff was entitled for the breach of the alleged promise, and these damages must be awarded solely for the suffering which resulted from the defendant's refusal to perform his promise, yet that it would not follow that the act of seduction was not to be taken into consideration by the jury. The damages, even under this rule, could not be justly estimated without regarding the increased exposure to mortification and distress to which the plaintiff had been exposed by a seduction under a promise of marriage afterwards broken."

In the case at bar, among other things, the court instructed the jury as follows:

"If from the evidence and under the charges given you, you find a verdict for the plaintiff, then it will become your duty to assess the amount of damage to which she is entitled. In fixing such damage, if any, you are authorized to take into consideration any mental anguish or distress suffered by the plaintiff as result of such breach of marriage promise, if any, upon the part of the defendant, and also any advantage which would have resulted to the plaintiff by reason of a marriage with the defendant. And if you further find that, under and by reason of a marriage agreement between the plaintiff and the defendant, the defendant seduced plaintiff and thereby begot her with child, this fact or condition may be taken into consideration by you in fixing the amount of damage, if any, sustained by her. The amount of damage, if any, to which plaintiff may be entitled will be such a sum as would, if paid now, fairly and reasonably compensate her for the injuries sustained by her on account of defendant's breach of his promise, if any, to marry her, taking into consideration only such elements of damage as you are hereinabove authorized to consider."

[1] There was no affirmative error in the charge quoted, and if it be conceded that in cases of this kind no recovery can be had for the support and maintenance of the bastard child, nevertheless no error was committed in refusing the requested charge upon that subject, because it went further, and erroneously stated that no damage could be assessed on account of the plaintiff's mortification or shame, caused by the fact that she was the mother of an illegitimate child, although the jury might believe that the defendant was the father of such child. The reverse of the latter statement is the rule of law supported by the weight of authority, although a few decisions in other jurisdictions may support the contrary view.

[2, 3] Appellant's contention that the case should be reversed even though the requested charge was erroneous because of the fact that it was sufficient to call the attention of the court to the error of omission in the court's charge cannot be sustained. Since the ruling of the Supreme Court upon that subject in Railway Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538, this court, and perhaps all the other appellate courts, has repeatedly held that a case will not be reversed when there is no affirmative error in charges given, merely because of an omission to state the law with more fullness and accuracy, unless the party complaining of such omission seeks to have the same supplied by a requested instruction properly framed. The court did not instruct the jury that the plaintiff was entitled to recover anything for the support and maintenance of the child, and if appellant desired a specific instruction upon that subject, he should have requested one that was free from error, and, not having done so, he is not entitled to have the case reversed upon that ground. However, in saying this we do not wish to be understood as holding that in awarding damages in this case the jury did not have the right to consider the fact that, on account of the defendant's breach of the marriage contract the plaintiff would be compelled to support a child of which the defendant was the father. Perhaps it is not necessary in this case to decide that question, but if such decision is necessary, we feel constrained to decide it against appellant. True it is that, under the common law, the father of a bastard child cannot be held legally responsible for its support and maintenance, and that the mother alone is responsible therefor; but in this case we are not dealing with the general liability of a father for the support of his bastard child, but with the question as to what constitutes the proper measure of damages for the breach of the contract of marriage. The weight of authority supports the proposition that, in such cases, in determining the amount of damages to be awarded, it was proper for the jury to take into consideration the condition in which the plaintiff is left by reason of the defendant's breach of the contract. In the instant case, if the plaintiff told the truth as a witness (and the jury must have concluded that she did) she yielded to the defendant's solicitations for sexual intercourse because she believed that he would keep his promise of marriage, in which event the child to which she subsequently gave birth would not have been a bastard, and appellant would have been primarily liable for its support and maintenance. According to her testimony, appellant was apprised of her condition, and knew what would be the result if he breached the marriage contract; but, notwithstanding these facts and his knowledge upon the subject, he refused to comply with his promise to marry the plaintiff, and thereby shifted upon her, not only the shame and ignominy of giving birth to a bastard child, but the legal responsibility for its support and maintenance, which, if he had complied with his contract, would have rested primarily upon him. It may be true that some authorities hold that, in cases of this kind, such damages are too remote, on the theory that they result, not from the breach of the promise to marry, but from the illicit intercourse in which the plaintiff, as well as the defendant, participated.

We do not desire to enter upon a discussion of the perplexing question of proximate cause, and content ourselves with the common-sense assertion that, if the defendant had not breached his promise, he, and not

the plaintiff, would have been liable for the support and maintenance of the child which would have been born during wedlock; and therefore his failure to comply with his contract constituted at least one of the causes which relieved him and rendered the plaintiff liable for the support of the child. That it is as much the duty of the father as the mother to support and maintain a bastard child is a proposition that cannot be successfully controverted in the forum of conscience; and when the father is sued by the mother for a breach of contract of marriage, and it is shown that on account of such promise the mother consented to the intercourse which resulted in the birth of the child, and that if the father had complied with his marriage contract, the child would not have been a bastard, and therefore he would have been liable for its support, and as suits for damages for breach of such contracts are actions sounding in tort, we think the jury, in awarding damages, should be permitted to take into consideration and allow compensation for the fact that, as a result of the breach of the contract, the father has shifted the support of the child from himself and placed it upon the mother.

[4] 2. The remaining question for discussion in this opinion is involved in appellant's contention that the marriage contract was invalid, and will not support an action for damages, because the consideration therefor was immoral and against public policy. According to the plaintiff's allegations in her petition, and her testimony, there was a binding contract of marriage entered into between herself and the defendant prior to the acts of sexual intercourse about which she testified; and while she stated that she would not have consented to and participated in such intercourse had not the defendant promised to marry her within a short time thereafter, and had she not believed that he would keep his promise, still the sexual intercourse was not the sole consideration for the promise of marriage. In fact, a valid contract of marriage already existed, the consideration for which was the mutual promise of both the plaintiff and the defendant to marry each other. A standard authority states the rule briefly in these words:

"The promises being mutual, each is usually the consideration for the other, but it is not the only possible consideration. It is not sufficient if the sole consideration is immoral or against public policy, but if other promises were made, free from the immoral or unlawful taint, the contract will be upheld on such other promises." 5 Cyc. p. 1000.

In a note to that text it is stated that the rule that a contract is void, if part of the consideration is illegal or against sound morals or public policy, is not applicable to agreements to marry.

In the instant case the plaintiff's testimony was sufficient to prove a valid marriage contract prior to the sexual intercourse, and therefore the contract was not void on account of an immoral consideration.

As already stated, all the other questions presented by appellant have received due consideration, and are decided in favor of appellee.

No reversible error has been shown, and the judgment will stand affirmed.

Affirmed.