FUNDERBURGH v. SKINNER. (No. 2055.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 13, 1919. Rehearing Denied March 6, 1919.)

1. BREACH OF MARRIAGE PROMISE ⬥23—CONTRACT—SUFFICIENCY OF EVIDENCE.

In action for breach of marriage contract, evidence *held* sufficient to sustain finding that contract had been entered into.

2. APPEAL AND ERROR ⬥994(2)—FINDINGS OF FACT—REVIEW.

In case involving credibility of witness who appeared before jury and furnished opportunity for all legal methods of testing truth of her statements, issue of credibility must be left to judgment of jury, and their finding cannot be disturbed on appeal.

3. BREACH OF MARRIAGE PROMISE ⬥27—DAMAGES—SOCIAL CONDITION OF PARTIES.

In action for breach of marriage promise, jury in estimating damages had right to take into consideration, not only pecuniary profits, but social and domestic advantages which plaintiff might reasonably expect from marriage with defendant.

---

**4. Breach of Marriage Promise ⬥⟶35—Damages—Instructions.**

An instruction as to measure of damages in action for breach of marriage promise *held* not erroneous as allowing recovery of double damages.

**5. Breach of Marriage Promise ⬥⟶28—Damages—Seduction.**

While a seduced female cannot recover damages for that act alone, it is proper to consider seduction when accomplished under promise of marriage thereafter broken, in action for damages for breach of marriage promise.

**6. Breach of Marriage Promise ⬥⟶35—Damages—Instructions.**

In action for breach of marriage promise, plaintiff has right to have attention of jury specifically directed to fact that they might consider seduction and anguish it alone may have added in estimating her damages.

**7. Appeal and Error ⬥⟶930(2)—Presumption—Misleading Instruction.**

In determining whether or not instructions are misleading, jurors are presumed to be not only men of ordinary intelligence, but men endowed with common instinct of fairness, which enables them, when not otherwise restrained, to determine issue of fact according to accepted rules of right.

**8. Breach of Marriage Promise ⬥⟶35—Damages—Instructions.**

In action for breach of marriage promise, jury could not have been misled into allowing double damages, although court, after having embraced in one paragraph all elements which jury should consider in estimating damages, gave a second paragraph, calling attention to fact that jury could consider seduction, not before mentioned.

**9. Breach of Marriage Promise ⬥⟶31—Damages—Amount.**

In action for breach of marriage promise against a man worth $35,000, who under promise of marriage had seduced plaintiff and was the father of her child, a verdict of $9,000 was not excessive.

**10. Appeal and Error ⬥⟶930(2)—Presumptions—Verdict—Instructions.**

Although when jury has been misdirected it will be presumed that directions have been obeyed and erroneous verdict rendered, there is no presumption that they have blundered simply because they had the opportunity to do so under the instructions.

**11. Trial ⬥⟶191(3)—Instructions—Assumption as to Facts.**

In action for breach of marriage promise, an instruction *held* not erroneous as assuming that defendant had made and broken a contract.

**12. Trial ⬥⟶351(2)—Special Issues—Request.**

In action for breach of marriage promise, in absence of request to have jury pass upon issue, court had right to find that, if there was a breach of contract, plaintiff had sustained injuries for which she might claim compensation.

**13. Trial ⬥⟶351(2) — Special Issues — Request.**

In action for breach of marriage promise, objection that a charge assumed that plaintiff had sustained injuries, made at time charge was submitted to attorneys for examination, was not equivalent to request that issue be submitted to jury, under Rev. St. 1911, art. 1985.

**14. Appeal and Error ⬥⟶1056(1)—Harmless Error—Exclusion of Evidence.**

A judgment will not be reversed on account of exclusion of evidence, simply cumulative of other testimony equally as explicit, coming from the same parties, corroborated in some respects by others, and which would not have caused jury to make a different finding.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Ethel Skinner, by next friend, against O. W. Funderburgh. Judgment for plaintiff, and the defendant appeals. Affirmed.

Johnson & Edwards, of Tyler, for appellant.

Simpson, Lasseter & Gentry, of Tyler, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for the sum of $9,000 as damages for the breach of a contract to marry her. The parties resided in the village of Elberta in Smith county. The appellant was a widower, and at the date of the trial he was about 45 years of age. His wife died in 1912, leaving him with a family of seven children, some of whom were quite young. He owned and occupied a home, and was interested in various business enterprises. In 1914 the appellee, then a young girl about 18 years of age, lived with her parents about one-fourth of a mile from the residence of the appellant. In July of that year the appellant employed her to keep house for him and do the cooking for the family. The evidence indicates that her parents were poor, and that she had but a limited education.

According to her testimony she usually spent her nights at home, but sometimes remained overnight at the residence of the appellant. She worked for him 2 years, and it was during that time the contract was made. About two months after her employment began the appellant first proposed marriage. It was then agreed by them that they would marry on her eighteenth birthday, which was the 23d of July, 1915. This agreement continued and was renewed when she later left the service of the appellant and started on a visit to her relatives in Alabama. Some time during the winter following their engagement the appellant persuaded her to submit to illicit sexual relations with him. He had won her confidence and had satisfied her that he intended to keep his promise of marriage.

As an inducement for her to yield he reminded her that they were to be married, and suggested that no other person would know what they did. She submitted to the appellant's request, and then commenced a course of illicit relations which continued for more than 2 years. Appellant was the first and only man with whom she had ever cohabited. In July, 1916, she became pregnant as a result of her intercourse with him. At his instance she went to Alabama on a visit to relatives, and was to 'remain there till her child was born. Appellant furnished her money for traveling expenses, and suggested that she pass as Mrs. Funderburgh, a grass widow. She adopted the suggestion and remained with her relatives till after the birth of her child, which occurred in April, 1917. She was positive that the appellant was the father of that child, but after its birth both she and the child were repudiated by him. Some time later she returned to Texas, and this suit followed.

The foregoing is the substance of the version given by the appellee. In addition to this she testified that the appellant had told her that he was worth about $35,000 or $40,000. The appellant, testifying in his own behalf, admitted that he had been carnally intimate with the appellee on as many as two occasions, but denied that he had ever proposed marriage to her, or that there was ever any agreement to marry her. He denied that he sent her to Alabama, or had authorized her to assume his name while there, but admitted that he had furnished her money, which she agreed to repay. Several letters exchanged by the parties while the appellee was in Alabama were in evidence, but the language used does little more than to suggest a situation of undue intimacy between them.

A number of witnesses testified that the appellee bore the reputation of an unchaste woman both before and during the time she was employed by the appellant. There was other testimony which, if true, was sufficient to support a finding that during her relations with the appellant she was also criminally intimate with another party with whom she associated, and that this man may have been the father of her child.

In response to special issues submitted by the court the jury found the following facts: (1) That at the date of the trial the appellee was 20 years old; (2) that she and the appellant had on two occasions agreed to marry each other; (3) that the appellant had refused to comply with that agreement; (4) that the appellee had been damaged in the sum of $9,000. No request was made by the appellant to have any other issues of fact passed upon by the jury.

[1, 2] In a group of assigned errors it is insisted that when considered in its entirety the evidence is insufficient to support a find-ing that the appellant ever made the alleged promise to marry the appellee. While conceding that there is some testimony tending to show that a marriage contract had been entered into, it is contended that the weight of the opposing evidence is so overwhelming that no reasonable basis is left to support the finding made by the jury. If the version given by the appellee of this unfortunate transaction is true, then she is not only the victim of a broken contract, but of seduction also. While the testimony relied on to break down hers was apparently stronger and emphatic, we cannot say as a matter of law that it was sufficient for that purpose. The situation is not one in which there is no proof of the essential facts, or one where there is only a scintilla of evidence relied on. But it is a case which involves the credibility of a witness who appeared before the jury and furnished the opportunity for all the legal methods of testing the truth of her statements. Under such conditions the issue of credibility must be left to the judgment of the jury; and, unless the record should disclose a corrupt or unfair exercise of that discretion, the verdict will not be disturbed.

Upon the measure of damages the court gave the following explanatory instructions:

"To aid you in determining your answer to question No. 6, you are instructed that the measure of damages will be compensation to the plaintiff for the breach of the promise and agreement to marry her, which includes all damages sustained from the disappointment of expectation, including the money value of her marriage, wounds and injuries to the affections, and the mortification and distress of mind resulting from the defendant's failure to comply with his promise and agreement to marry her."

To this he added the following paragraph:

"You are further instructed that if you find by a preponderance of the evidence that the plaintiff was induced by reason of a promise and agreement, if any, to marry, to submit to sexual intercourse with the defendant, and he begat her with child thereafter born, you may consider that fact in estimating the damages, if any, you may award to the plaintiff. However, if Ethel Skinner submitted her person to the defendant without any regard to the promise of marriage, then the fact of such carnal intercourse, and that he may have begotten her with child thereafter born, could not be considered by you in estimating the damages, if any, in this case."

[3, 4] Counsel for the appellant do not in their brief and argument complain that the first paragraph quoted contains any elements not proper to be considered in estimating the damages recoverable in a suit of this character, but they insist that in the manner of presenting the different elements the court authorized and virtually instructed a consideration of the same conditions twice or more, thus allowing the recovery of double damages. In estimating the damages which the plain-

tiff might recover in this case the jury had a right to take into consideration, not only the pecuniary benefits, but the social and domestic advantages which she might reasonably expect from a marriage with the appellant. A fair analysis of the first portion of the charge quoted will disclose that the court began by using terms that were general and comprehensive, and they descended to more specific details. Compensation was to be the measure. This included damages "sustained from the disappointment of expectation," and within the latter might be included the following: The money value of the marriage. In addition to this wounds and injuries to the affections, mortification and distress resulting from the appellant's failure to keep his promise should be considered. We are unable to discover in this language any that directs the jury to duplicate the elements of damages.

[5-8] It is contended that the court having embraced in the first paragraph all the elements which the jury should consider in estimating the damages, the giving of the second paragraph was tantamount to an instruction to allow an additional sum for seduction alone. While under the rule adopted in this state a seduced female cannot recover damages for that act alone, it is proper to consider the seduction, when accomplished under a promise of marriage thereafter broken, in suits of this character. Huggins v. Carey, 108 Tex. 358, 194 S. W. 133; Daggett v. Wallace, 75 Tex. 353, 13 S. W. 49, 16 Am. St. Rep. 908; 3 Sutherland on Damages, § 986. It is proper to assume that under ordinary circumstances marriage contracts are entered into with a view of increasing the happiness and promoting the future welfare of the parties. Each may expect to gain an advantage that will add to the joys of living. An unjustifiable refusal of one of them to perform the contract usually results in more or less mental suffering on the part of the other, even when unattended by any aggravating conditions. But when a respectable female, debauched under a promise of marriage, is left with the evidence of her shame made public in the form of an illegitimate child, it is but fair to assume that her anguish is materially increased. If the fact of seduction may be considered in such cases it is because that transaction may add something which logically enhances the injurious consequences of the refusal to marry. It is true that in the first paragraph of the court's charge he used language broad enough to include all mental suffering endured by the appellee as a result of the appellant's refusal to marry. The plaintiff had a right to have the attention of the jury specifically directed to the fact that they might consider the seduction and the anguish it alone may have added in estimating her damages. Jurors are presumed to be not only men of ordinary intel-

ligence, but men endowed with the common instincts of fairness, which enables them, when not otherwise restrained, to determine issues of fact according to the accepted rules of right. To allow compensation twice for the same injury is repugnant to even an ordinary sense of justice, and it should not be assumed that a jury had construed a charge as a direction to perpetrate such a wrong, unless the language of the charge was susceptible of no other reasonable construction, or the record otherwise indicated that such an allowance had been made. The fact that, after concluding the enumeration of the elements of damage embraced in the first paragraph of the charge quoted, the court added the second, calling attention to the seduction—something not before mentioned— was sufficient to indicate to any rational mind that he did not regard the consequences of the seduction as having been included in the elements previously named. This is not only the reasonable inference, but any other would be unreasonable.

[9] Counsel for appellant point to the size of the verdict as proof of the fact that the jury did allow double damages. If the jury believed the testimony of the appellee concerning the wealth of the appellant and his treatment of her, the damages awarded are not sufficient to indicate the allowance of more than a reasonable compensation.

[10] The assumption that jurors have gone wrong and have perpetrated an injustice merely because, under the instructions, they might have done so, has, we think, been carried in some cases beyond the limit of sound reason. Our system of trial by jury is founded upon the presumption that jurors are the safest and best judges of those details which cannot be regulated by laws. The conclusion that they had blundered simply because they had the opportunity is, apparently, the only ground for the reversal of some cases. Such adjudications are impeachments of the system itself. Of course, when the jury have been misdirected it will be presumed that the directions have been obeyed and an erroneous verdict rendered. But that rule does not apply when the more reasonable construction of the charge is not a misdirection.

[11-13] The charge was also objected to as being upon the weight of the evidence, in assuming that the defendant had made and breached a promise to marry the plaintiff, and that she had sustained the injuries mentioned as elements of damage. In submitting question No. 2 the court used the following language: "Did the plaintiff, Ethel Skinner, and defendant, Funderburgh, mutually promise and agree to marry each other?" To which the jury answered, "Yes." Question No. 3 followed: "If you have answered question No. 2 in the affirmative, then answer, Did the defendant refuse to comply with such contract to marry Ethel Skinner?" An

affirmative answer was made to this. A similar answer was made to question No. 5, which inquired if the defendant agreed to marry the plaintiff about the time she left for Alabama. Question No. 6 was as follows: "If you have answered questions No. 2 and No. 3 in the affirmative, or questions No. 2 'and No. 5 in the affirmative, then answer: What amount of money, if paid now, will reasonably compensate the plaintiff for the damages, if any, she has sustained by reason of the failure of the defendant, Funderburgh, to comply with his contract and agreement, if any, to marry the said Ethel Skinner?" Then follow the instructions previously quoted, enumerating the elements that might be considered in estimating the amount of damages. There was here no assumption on the part of the court that the appellant had made and broken the contract. In the absence of a request to have the jury pass upon the issue, the court had a right to find that the plaintiff had sustained injuries for which she might claim compensation. Rev. Civ. St. art. 1985. The objection, that the charge was on the weight of the evidence, made at the time the charge was submitted to the attorneys for examination, was not equivalent to a request that the issue be submitted to the jury. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1134. Such objections then made are interposed for other purposes, and are not to be construed as the written requests required by the statute referred to.

[14] The appellant proved by several witnesses that at and before the time the appellee became pregnant she was receiving attentions from one Richard Sipes, a married man, under circumstances which tended to show the existence of improper relations between them. While admitting that Sipes was a personal friend of hers, appellee denied any carnal intimacy with him. She denied that she had ever gone with him alone, except on one occasion when going from Tyler to her home. The appellant offered to prove by two witnesses, Shaver and Oglo Funderburgh, that:

"In the summer of 1916, when an automobile in which these two witnesses and two other men were riding east from Tyler passed a buggy in which were riding a man and woman, the witness Oglo Funderburgh remarked aloud, 'There goes Ethel Skinner with Richard Sipes.'"

Appellant also offered to prove by two witnesses, Jamison and Crawley, that:

"One night during the fair at Tyler, in October, 1915, when Richard Sipes placed and left in charge of the witness Jamison the young brothers and sister of Ethel Skinner, Sipes stated to Jamison that he and the plaintiff were going out of the fairgrounds and over to the business part of the town."

All of this proffered testimony was excluded on the objection that it was hearsay. Sipes testified that in October, 1915, during the Tyler fair, he and the appellee left the grounds between 9 and 10 o'clock at night, went in a service car to town, 'where they secured a buggy and horse and drove out into the suburbs on the opposite side from the fairgrounds. They remained there a while, and returned to the fairgrounds about the time the crowd 'was dispersing. Jamison testified, in substance, that he saw both Sipes and the appellee and the younger sister and brothers of the appellee at the fairgrounds on the night referred to; that at Sipes' request he took charge of the children, and that Sipes and the appellee then walked off together, and did not return till about time to go home. Shaver testified to substantially the same facts. At least two other witnesses testified to seeing the appellee and Sipes together that night under circumstances that tended to show that they were returning from some other place. The testimony of the witnesses Jamison and Crawley was offered as a part of the res gestæ in an effort to prove that Sipes and the appellee were together on that night at the fairgrounds. Conceding that it was admissible for that purpose, we are of the opinion that its admission would not have caused the jury to make a different finding upon the issue to which it related. It was simply cumulative of other testimony equally as explicit, if not more so, coming from the same parties, corroborated in some respects by others. The suggestive portion of the testimony was the statement by Sipes that he and the appellee were going over to the business part of town. That fact alone would furnish so little evidence of criminal intimacy that it might have been rejected as immaterial. The important fact, if true, was their going off into the suburbs of town alone. Of this Sipes gave no intimation to these witnesses. Evidently the jury discredited all of the testimony concerning appellee's associations with Sipes, or made proper allowance therefor in the damages awarded. We do not regard that evidence, if admissible, of such importance as to require a reversal of this judgment. Snow v. Starr, 75 Tex. 411, 12 S. W. 674; Payne v. Benham, 16 Tex. 364; Gal., etc., Ry. v. Matula, 79 Tex. 577, 15 S. W. 573; G., C. & S. F. Ry. Co. v. Cornell, 29 Tex. Civ. App. 596, 69 S. W. 980. For the same reason we are of the opinion that there was no reversible error in the rejection of the testimony of Oglo Funderburgh and Shaver. The fact that appellee passed in a buggy in company with Sipes at the time mentioned was shown by two witnesses who saw and recognized them.

The judgment is affirmed.