David NACIM, Appellant,

v.

Esther IBARRA, Appellee.

No. 5258.

Court of Civil Appeals of Texas.

El Paso.

Feb. 5, 1958.

Rehearing Denied Feb. 26, 1958.

 

Fryer, Milstead & Luscombe, El Paso, for appellant.

Guinn & Guinn, El Paso, for appellee.

WILLIAMS, Justice.

This is a suit for breach of promise to marry, seduction, and an illegitimate child.

Appellee's Original Petition was filed October 24, 1953, and alleged that the promise to marry and the agreement thereto were made in the summer of 1952, and that the marriage was to be performed within a reasonable time, and that that time had expired. Plaintiff filed her First Amended Original Petition, on which trial was had, on September 9, 1956. In it she alleged that the promise and contract to marry were made in February 1953, and that same was breached in January 1954.

On the question of damages suffered by plaintiff, the following Special Issue No. 6 was submitted to the jury:

"What sum of money if paid in cash now do you find from a preponderance of the evidence would reasonably compensate the plaintiff for the failure, if any, of the defendant to comply with his promise, if any, of marriage? Answer in dollars and cents.

"You may take into consideration any mental anguish, if any, humiliation and disgrace, if any, which the plaintiff has suffered and will reasonably and probably suffer in the future. Further, if you find and believe from a preponderance of the evidence that the defendant is the father of plaintiff's child and that such child was born as a result of the relation of the parties set forth in Question No. 3, you may take such facts into consideration and allow such sum as you feel is reasonable for the support and maintenance of such child.

"The sole elements of damage which you may consider in answering this question have been given you, and you

will neither discuss, consider, nor allow any other element of damage."

Plaintiff plead her damages in three separate and distinct paragraphs, and in substance as follows:

(a) $10,000 for loss of not being in a higher income group (which was not submitted to the jury and therefore a remittitur in that amount was ordered.)

(b) $10,000 for humiliation and disgrace.

(c) $18,000 for support and maintenance of the child.

In answer to Special Issue No. 6 the jury found the damage to be $37,000. Remittitur of $10,000 was filed.

Appellant's first point of error complains that there is no evidence as to any cost incurred by plaintiff by reason of her alleged seduction, and no evidence as to the cost of rearing the child, and that, therefore, it was error to allow the jury to consider these items. His objection to the issue being submitted to the jury was that there was no evidence as to what sum of money was required to support plaintiff's child, and, further, that the instruction of the court would permit the jury to return a verdict of double damages.

■ Plaintiff testified at length that she was the sole support of her aunt, herself, and the child; that she worked at Safeway Stores and, as a result of her pregnancy, lost certain days from her work; that she employed one of the best obstetricians in the City, giving his name, to attend her at childbirth, etc. But nowhere does she testify as to what her salary at Safeway was; as to what she paid the doctor, or what she paid for any other expense; or what amount of money she had spent on the child in any way. In fact, the record is absolutely silent as to any monetary expenditure already made, or to be made in the future. Therefore, we do not think there was sufficient evidence to permit such an issue being considered by the jury. Boone v. Henry, Tex.Civ.App. Ft. Worth

1941, 151 S.W.2d 323 (dism.), and authorities therein cited. But we do not think this is the sole, or even the most important, objection to that issue.

■ It seems to be settled law in Texas that the jury's attention can be called to the fact that they can consider the matter of seduction and the birth of the child as the result thereof, to the extent that same may increase her mental anguish, humiliation, etc. Welge v. Jenkins, Tex.Civ.App. Austin 1917, 195 S.W. 272 (err.ref.); Huggins v. Carey, 108 Tex. 358, 194 S.W. 133, reversing Tex.Civ.App., 149 S.W. 390; Funderburgh v. Skinner, Tex.Civ.App. Texarkana 1919, 209 S.W. 452 (err.ref.); Boone v. Henry, supra; 7 Tex.Jur. 279. These cases make it plain that the seduction and the child can be considered in the above manner, but they also make it clear that a recovery for the seduction, or for the support of the illegitimate child eo nomine cannot be had. The Supreme Court, in Huggins v. Carey, supra [108 Tex. 358, 194 S.W. 135], says:

"It was proper to allow the jury, in assessing the damages, to take into account, if they should find there was a breach of promise to marry, the fact of seduction, though it is not permissible to allow damages for seduction alone. Daggett v. Wallace, 75 Tex. [352] 353, 13 S.W. 49, 16 Am.St.Rep. 908."

■ Since the plaintiff plead, as a separate item of damages, the cost of supporting the child,—plaintiff's pleading in this regard being in part:

"* * * support for this child to her further damage in the sum of $18,-000.00",

and since the court said, in his charge to the jury:

"* * * and allow such sum as you feel is reasonable for the support and maintenance of such child",

we feel that the jury was permitted to award up to $18,000 for the support of said child. We think this was error. Welge v. Jenkins, supra [195 S.W. 274], says:

"There was no affirmative error in the charge quoted, and if it be conceded that in cases of this kind no recovery can be had for the support and maintenance of the bastard child, nevertheless no error was committed in refusing the requested charge upon that subject, because it went further, and erroneously stated that no damage could be assessed on account of the plaintiff's mortification or shame, caused by the fact that she was the mother of an illegitimate child, although the jury might believe that the defendant was the father of such child. The reverse of the latter statement is the rule of law supported by the weight of authority, although a few decisions in other jurisdictions may support the contrary view.

" * * * The court did not instruct the jury that the plaintiff was entitled to recover anything for the support and maintenance of the child, and if appellant desired a specific instruction upon that subject, he should have requested one that was free from error, and, not having done so, he is not entitled to have the case reversed upon that ground."

However, we feel that since this item was separately plead, and to the extent of $18,000, the error can be cured by requiring a remittitur of that amount. We think the rest of the verdict would be untainted by this error, and therefore could stand, so far as this point is concerned. Huggins v. Carey, supra, would permit this. See also, Texas Pipe Line Co. v. Hunt, 1950, 149 Tex. 33, 228 S.W.2d 151–155.

We do not consider that this issue was subject to the criticism of allowing double recovery, but we consider, as above stated, that it allowed an improper element.

■ Boone v. Henry, supra [151 S.W.2d 324], discusses this feature of the case, and holds that the charge therein permitted double recovery because, in the first paragraph, it allowed the jury to "take into consideration the pecuniary or financial" advantages, etc.; and, in the second paragraph, permitted the jury to consider "the expenses, if any," etc. The court therefore held, and we think correctly so, that it allowed double recovery and was controlled by Huggins v. Carey, supra. We think Funderburgh v. Skinner, supra, is more in point in the instant case, so far as double recovery is concerned. We therefore feel that the instant charge does not permit double recovery, but, as stated, we think it permitted an improper element of recovery.

■ Appellant's second point complains "there was no evidence before the court and jury as to any humiliation or disgrace" etc. These items do not admit of the exactness of proof as do the expenses, etc., considered under the first point and, therefore, we hold that the evidence was sufficient to permit these points to be submitted to the jury. Appellant's second point, therefore, is overruled, 13 Tex.Jur. 456; Weadock v. Denham, Tex.Civ.App. Texarkana 1927, 299 S.W. 301 (no history).

■ Point three contends that the contract of marriage was based on an illegal consideration because plaintiff, in a deposition that was taken soon after the original suit was filed, stated that she had sexual relations with defendant because he promised to marry her, etc. However, plaintiff's testimony, as a whole, made it clear that she contended that the first proposal of marriage was made in the summer of 1952, the second proposal in February 1953, and that she did not submit to sexual relations until April 3, 1953. We therefore consider there is no merit in appellant's Point III, and same is overruled. Olguin v. Apodaca, Tex.Com.App.1921, 228 S.W. 166. This case, and others, make it clear that, to be illegal, the sole consideration to submit to intercourse must be

the promise of marriage, and that if same is accompanied by a prior courtship, etc., as in this case, the consideration is legal. 7 Tex.Jur. 269. This brings us to one of the most important issues in this case, appellant's Point IV:

"The court erred in overruling defendant's special exception alleging that the purported marriage contract alleged in plaintiff's first amended petition was a separate and distinct agreement and was barred by limitation."

As is shown by our above statement of the facts, appellee's original pleading was filed September 24, 1953, and set up that the contract was made in the summer of 1952, and that defendant (appellant) agreed to marry in a reasonable time, and that a reasonable time had expired, and that he had failed and refused to do so. The First Amended Original Petition was not filed until September 9, 1956, and it set up an entirely new promise and made no mention of the original promise, or that same was a continuing one. In this regard it states:

"That in February, 1953, at El Paso, El Paso County, Texas, defendant proposed to plaintiff that they get married to each other, which proposal was then and there accepted by plaintiff."

This is the entire pleading as regards the contract. The only breach of promise plead in the amended petition is as follows:

"That at all times since the making of said contract as aforesaid and up to the present time Plaintiff, relying thereon and believing that Defendant would marry Plaintiff, had remained unmarried, but the Defendant since Plaintiff filed her Original Petition to the contrary did wrongfully marry another party doing so on or about January 21, 1954."

This is the entire pleading so far as a breach is concerned.

We think this point is controlled by Article 5539b, Vernon's Annotated Civil Statutes of Texas, although neither party mentioned it in his brief.

Appellant argues, of course, that the amended petition sets up a new cause of action and is, therefore, barred by the one-year statute of limitation, Article 5524. Appellee (plaintiff below) insists that there was a continuing promise to marry, and, therefore, that no new cause of action is alleged in the amended pleading, and, therefore, since the original pleading was filed within one year of the alleged breach, that the amended petition is not barred by limitation.

The jury found that, some time after February 1953 (the date of the promise alleged in the amended pleading), plaintiff and defendant agreed to get married on June 23, 1953. The undisputed proof showed that they did not get married on that date, and no issue was submitted to the jury as to whether or not he had breached his contract, his defense being that he never made any contract. Defendant also denied that he had ever had sexual relations with the plaintiff. It is clear to see that the amended pleading was not filed until nearly three years after the date set for the wedding, or after the undisputed evidence showed he married another woman. Therefore, the sole and all-important question is: Is the amended pleading saved from the statute of limitation by the filing of the original petition? The statute above referred to in this regard says that the filing of the original petition tolls the statute of limitation as to the later amended petition "provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence."

This statute was passed in 1931, and it is very clear that it broadened, and was intended to broaden, the rule then in effect, and to prevent the running of limitations after the original suit was filed, as to all amended pleadings growing, in whole or in part, out of the same ."transaction and occurrence."

This court discussed this statute and gave it a broad application recently in Amis Propane, Inc., v. Graves, Tex.Civ. App., 305 S.W.2d 300 (no history).

The statute and its application is discussed in 28 Texas Jurisprudence 213, section 117 et seq.

■ Clearly, the amended petition sets up a new cause of action. It alleges a new promise and a new breach and, unfortunately, does not state that the new promise is a continuation of, or a renewal of, the original one. However, we have concluded, after much deliberation, that the amended petition is not "wholly based upon and grows out of a new, distinct or different transaction and occurrence." We therefore hold that the statute above referred to is broad enough to include this situation, and that the court did not err in overruling appellant's plea of limitation as to the amended petition. The entire transaction, out of which both causes of action grew, was one courtship between the same parties, one seduction, and one breach. Although the promises were made at different times, according to the petitions, and although different dates were given for the breach, still we think this did not wholly constitute a new transaction or occurrence. The above authorities and the cases therein cited seem to us to sustain this holding.

By Point V, appellant complains that the court erred in admitting, over his objections, photographs of the child.

■ In Boone v. Henry, supra [151 S.W.2d 326], it was held that it was error to introduce or parade a very young child before the jury for the reason that it was thought that "the features of a very small child are not settled to the extent that resemblance is as plain as it is in the case of adults." We think the same rule would apply to pictures. It seems, however, that in the instant case, the pictures were taken when the child was some two and a half years old. It is said, in 20 American Jurisprudence 604, section 721:

"The precise age at which a child will be deemed too immature to be exhibited is obviously dependent upon the facts and circumstances of each case. No claim can be reasonably made that there is any resemblance between a very young child and its alleged father, but a child of two years and one month, or several years, is sufficiently mature and settled in its facial and physical characteristics to afford a basis for a comparison."

The record here is silent as to the development, or non-development, of the child's features, etc. Therefore, we feel we have no basis whatever for saying that the trial court abused its discretion in admitting the pictures. Furthermore, we think that the error committed, if any, was rendered harmless and waived, because the child was thereafter brought before and shown to the jury, without objection.

The other issues (except the last, as hereinafter discussed), relate to the admissibility of evidence, and to the general decorum of appellee's counsel in the courtroom. These were matters to be controlled by the discretion of the trial court, and we find no error in the manner in which he handled them.

■ The tenth and last point of error complains that the court erred in not granting a new trial on the ground of newly discovered evidence. The evidence referred to, and claimed to constitute newly discovered evidence, was the proof that, immediately after the jury's verdict, appellee's counsel took appellee to one of the local newspapers and gave them an account, from her point of view, of the entire trial and the circumstances. She also furnished the paper a picture of the appellee, which appeared in the paper along with the writeup of how she had been seduced, abused, deserted, etc. Appellant contends that this showed that the appellee had not been humiliated, chagrined, and disgraced as she claimed she had been during the trial, and that this constituted new-

ly discovered evidence. As authority for this proposition, he cites Forshagen v. Payne, Tex.Civ.App. Ft. Worth 1949, 225 S.W.2d 229 (no history).

Even if the above can be considered newly discovered evidence, we do not think it of sufficient probative force to compel the trial court to grant a new trial. Therefore, we find no error in the court's action, and overrule appellant's Point X.

Wherefore, the judgment below is affirmed, on the condition that the appellee, within ten days from this date, file a remittitur in the sum of $18,000; otherwise, the judgment below will be reversed and the cause remanded.