Meto MITEFF, Appellant,

v.

GUARDIAN TITLE COMPANY, Appellee.

No. 18371.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 19, 1981.

Miteff & Finney, and David Finney, Fort Worth, for appellant.

Meier & Keller, Wallace T. Keller and Edward G. Markey, Euless, for appellee.

OPINION

MASSEY, Chief Justice.

At the close of the evidence adduced upon jury trial the court, being of the opinion that the facts were undisputed and that there was no ultimate fact to be decided, released the jury and rendered judgment in favor of the plaintiff, Guardian Title Company, and against the defendant, Meto Miteff, for $5,000.00 plus interest from date of judgment (February 25, 1980), plus costs.

Therefrom Miteff has appealed.

We affirm.

At a material time Miteff was the owner of a house and lot in Fort Worth, Tarrant County, Texas, which he contracted to sell to Charles C. Wight, Jr. and his wife, Jean M. Wight. The date of the sale contract was August 17, 1974. Therein was contained the following:

"2. The purchase price is $125,000.00 payable as follows: $88,300.00 cash, of which Buyer has deposited with the undersigned agent (Wirt Norris & Company, Realtors, by Angela Rambo) Buyer's check subject to collection for $10,000.00 as part payment, . . . .

"5. [S]hould Buyer wrongfully fail to perform, Seller shall have the right to retain the cash deposit (but not exceeding 10% of the purchase price) as liquidated damages. . . . The damages suffered by either party are uncertain, and the sum fixed, is agreed upon as the damages sustained by the party not in default. However, either party may elect to have specific performance, if the other defaults.

"6. Commission of 6% of purchase price shall be paid by Seller to the undersigned agent for services as a real estate broker and shall be due at Fort Worth, Texas, when this sale is consummated or, if Seller defaults, then upon such default. If Buyer defaults and if Seller elects to retain the cash deposit as liquidated damages, then Seller shall pay to the agent one-half of the amount retained up to the total amount of the commission due, in full payment for agent's services."

By agreement the $10,000.00 received from Mr. and Mrs. Wight was delivered to Guardian Title Company, which Miteff had stated to be the company he desired to handle the closing of the real estate sale transaction. Indeed, the Wights' checks, totalling $10,000.00, were by agreement made payable to such title company. By arrangement between himself and the title company Miteff obtained such $10,000.00 through an endorsement of the checks to him. He gave in exchange his own $10,-000.00 check.

In this manner Miteff had the use of the $10,000.00 pending consummation of the sale transaction. The title company held

the Miteff check as though it was the escrowed Wight advance payment (or earnest money). This was by agreement, though involving a letter of credit which is not necessary to be further noticed. By the time the Guardian Title Company presented the Miteff check, Miteff had concluded that it should not be paid, and by arrangement made with his bank, payment was refused when his check was presented.

As of this time the situation was substantially as follows: Guardian Title Company had delivered $10,000.00 to Miteff because he became ready and willing to convey according to his contract with the Wights; Miteff was or became entitled to such total amount either as liquidated damages or as part payment upon an enforced specific performance. Of course, it is evident that if the Miteff entitlement matured, as it did upon his (eventual and/or by operation of law) exercise of option to treat same as liquidated damages forfeited, he would, as a result of that election and as of such time, owe the agent one-half or $5,000.00. This would be so because by the contract the $10,000.00 would become the entitlement of Miteff upon his election to declare forfeiture, and, because the $10,000.00 had been reduced to possession as a fund *in rem*, Miteff was in the position of holding $5,000.00 which could be properly deemed the property of the real estate agent. Anyway, it might be said, Miteff owed $5,000.00 to the agent.

Until Miteff made the election of forfeiture he was entitled—because of the consent of the agent—to retain the $10,000.00 for application upon the total contracted purchase price in the event he should elect to seek specific performance by the Wights. Had he done so then he would be obliged to pay 6% of the proceeds thereupon obtained from the Wights to the agent as his commission.

Before time had been scheduled for consummation of the sale transaction Mr. Wight died. Date of death was December 5, 1974. He died intestate. Administrators were appointed for his estate, and they qualified and became empowered to act as

such on May 30, 1975. In other words, there was a period of nearly six months between the date Mr. Wight died and the time anyone became authorized to administer his estate. (For our purposes it is simpler to disregard the six month tolling of limitation as result of the death of Mr. Wight.) To be noticed is that by the sale contract the liability of Mr. and Mrs. Wight was joint rather than several, or joint and several, though by our disposition this fact was immaterial.

Ultimately Mrs. Wight concluded that she did not desire to acquire the Miteff home. Apparently, after May 30, 1975, the administrators for Mr. Wight's estate likewise concluded. Miteff had contracted with third parties to purchase a new home and had himself put up earnest money to bind that transaction. Obviously he could not or would not desire to proceed with such purchase if he could not consummate the sale of his home to the Wights; in any event he did not consummate the purchase. The earnest money advanced by him on that transaction was forfeited as liquidated damages. This resulted in a loss to Miteff which he was powerless to recoup from anyone. Obvious from the record is that there was a period during which he was in a quandary as to whether he should or could obtain specific performance to purchase from Mrs. Wight and the administrators for the estate of her husband, or, whether he should exercise his election to treat the contract as one in which the $10,000.00 advance would be forfeited.

The record is silent as to when Miteff made the election to declare forfeiture, if, indeed he ever did voluntarily elect at all. No one could know exactly when he did so for no one other than Miteff could have known it and he never gave any notification to anyone.

Through operation of law we hold that there necessarily would be the conclusion that such election had been made by Miteff by the end of the four-year period within which he could have brought suit for specific performance, whatever that date might have been. Miteff possessed the right to

act in a manner which would limit his agent's right to $5,000.00, but the law would not operate to prevent his agent from having entitlement to this amount in any event, for that would amount to the sanction of fraud. To that end it would be presumed that there would come a time when any suit by Miteff for specific performance against Mrs. Wight and the representatives of her deceased husband's estate would be met and defeated by pleas of limitation by the defendants in that action; and that, from and after that time when Miteff's claim for specific performance could be defeated by a limitation plea, by operation of the law would become matured an obligation (of Miteff) to treat the Wights' contract as at an end and with the Wights' earnest money forfeited as liquidated damages. To hold otherwise would be to defeat the agent's right to his commission, something the law will not permit. This is the most material holding we make in this case.

By the evidence we do know that in a letter dated January 8, 1975, Miteff wrote to Mrs. Wight stating that "closing" on the Wight contract was set for 4:00 p. m. on Wednesday, January 15, 1975, at the offices of Guardian Title Company in Fort Worth, Texas. Therein Mrs. Wight was notified that such title company was ready to issue an owner's title insurance policy on the property. Further language in the letter gave notice to Mrs. Wight, as follows: "Your failure and the failure of the legal representative of your late husband's estate to be present at the closing . . . will (be) deemed a default under the terms of the contract and I will immediately demand that the $10,000.00 escrow deposit be paid over to me and will immediately proceed to seek specific performance of the contract by you and the estate of your late husband." (Actually, the $10,000.00 had already been paid to Miteff.) Further paragraph of the letter read, as follows: "Please accept my deepest sympathy on the loss of Mr. Wight and I hope you understand my having to elect to have specific performance of this contract, for as I explained to you in December Virginia and I have obligated our-

selves to purchase another property which has to be closed on January 15, 1975." Copies of this letter were sent to Guardian Title Company and the real estate agent.

Neither Mrs. Wight nor any representative of her deceased husband's estate were present at the scheduled time for closing the sale and conveyance of the property. Indeed, at the time there was no representative of Mr. Wight's estate; administrators were not established as qualified until May 30, 1975.

Miteff never did proceed to seek specific performance of contract as represented would be done by his letter dated January 8, 1975. Though that letter indicated that Miteff would demand that the $10,000.00 earnest money escrow deposit be paid over to him, the delivery would not be as liquidated damages but, apparently, as the reduction of the same to possession as part payment on the total price contracted. Miteff's letter stating his election to have specific performance constituted notice (of non-binding character) to all interested parties, save to the appropriate representatives of the estate of Mr. Wight (who had not yet been appointed.) We may speculate upon exactly when any election could effectively be made by Miteff but it is not necessary to determine; it being important only to observe that he was not committed by the letter of January 8, 1975.

Mrs. Wight and the administrators took no legal action against Miteff; Miteff took no legal action against them. After the failure of anyone representative of the Wight interests to appear on January 15, 1975, and even after the appointment and qualification of the administrators for Mr. Wight's estate on May 30, 1975, nothing occurred. There was nothing communicated from Miteff to anyone constituting notice of any effective election by him— though he had earlier indicated he would elect to demand specific performance of any contract to purchase. Neither was there anything effectively communicated constituting notice of his election to treat the $10,000.00 as his entitlement as liquidated damages by forfeiture. Had the latter

been the Miteff election, communicated to the estate of Mr. Wight and to Mrs. Wight, Miteff would no longer have the right to demand specific performance. So long as there was pendency of the Miteff right to make an election there could not have accrued any right of the agent to $5,000.00 (of the $10,000.00 Wight deposit), either as Miteff's indebtedness to him or as *in rem* property.

While the legal situation continued as existent, Guardian Title Company purchased the claim of the real estate agent. This was not pursuant to any venture for profit by Guardian Title Company but because the agent insisted that he should be paid the $5,000.00 and Guardian agreed. Guardian had received the Wights' entire $10,000.00 deposit (as earnest money by agreement of all interested parties), but had delivered it to Miteff. At the time this was done there was not any certain knowledge that the amount of the deposit was free of any claim by the Wights. As it developed, Miteff became entitled to receive the $10,000.00. So far as the record shows neither Guardian Title Company nor the real estate agent gave notice to Miteff of the assignment made by the agent. Date of the assignment was October 5, 1976. This was prior to time suit was filed against Miteff on February 2, 1977.

Some time prior to receipt of the assignment from the agent, Guardian Title Company had presented the Miteff $10,000.00 check for payment. Payment was declined by Miteff's bank. There is exhaustive explanation of the developments leading up to the occasion for this, but there is no need to explain for purposes of this opinion. Only necessary to be noticed is that prior to the time suit was filed in this case, Guardian Title Company owned the agent's cause of action, whether ripe to be prosecuted by suit or not. We have concluded that by the circumstances Guardian's only property right as against Miteff, assuming that Guardian was free of any liability to the Wights—as ultimately proved to be the case—was for the claim assigned to it by the agent. (Miteff was entitled to credit of $5,000.00 against the claim made of him for $10,000.00 in any event.)

By the pleadings as originally filed that upon which Guardian Title Company declared as basis for relief may be summarized, as follows: That Miteff had promised and agreed to pay to it the sum of $10,-000.00 as represented by the Miteff check No. 122, dated January 14, 1975, drawn on his account in the Tarrant State Bank, payable to such title company; that upon presentment there was refusal to honor and pay the same; and that such refusal constituted a breach of the Miteff promise to pay.

On August 28, 1979 the First Amended Original Petition of Guardian Title Company was filed. Here, for the first time Guardian specifically plead, *in the alternative to the cause of action declared upon in its original petition, that it had received the assignment of the agent's claim against Miteff by the contract of August 17, 1974, and that by reason thereof it was entitled to judgment against Miteff for $5,000.00 under contractual provisions.*

In answer to their alternative plea Miteff set up the bar of limitation by Tex.Rev.Civ. Stat.Ann. art. 5527 (1958) "What actions barred in four years". In that connection Miteff plead, as follows: "The allegation . . . was filed August 28, 1979, and Plaintiff's action based upon the assignment from (real estate agent) Wirt M. Norris as therein stated accrued more than four (4) years before the filing of Plaintiff's First Amended Original Petition and of the commencement of its suit under said assignment and that the same is barred by limitations, . . . ."

It was while the amended pleadings existed as above explained that the case proceeded to trial, was completed, and terminated in the judgment for Guardian Title Company in the amount of $5,000.00. By the time of trial sufficient time had expired that any claim of Miteff against the Wights for specific performance of contract could have been defeated by them upon filing appropriate plea of limitation. We deem this fact of controlling importance.

The trial court was required to enter the judgment which was rendered, and this

court is required to affirm it for several reasons to be discussed.

Conceded save for application of the four-year statute of limitation was the Miteff liability to pay $5,000.00 to Guardian Title Company because of assignor agent's contractual claim for one-half the earnest money on a forfeiture under the real estate contract. The liability had accrued—with any applicable limitation period having begun—upon Miteff's presumed—by operation of law—election to retain the Wights' $10,000.00 as liquidated damages.

Peculiarly within the knowledge of Miteff, and known only by him, was the time when he made the election of forfeiture (rather than to exact specific performance of the Wights' contract to purchase.) Such time, peculiarly within Miteff's knowledge, would have been his burden to prove—as well as when the real estate agent, or Guardian Title Company or his assignee, had notice of the election.

To be remembered is that the statutes of limitation are "statutes of repose", only useful to cut-off the rights of any who should be, but are not, in court claiming existent rights against those who should respond. In this case the real estate agent and the Guardian Title Company, his assignee, could not have "reposed" for a complete four-year period before demanding the $5,000.00 of Miteff after they possessed knowledge of their right thereto—and to no more. (A greater sum would have been the entitlement of the agent had Miteff successfully proceeded against Mrs. Wight and the administrators of Mr. Wight's estate to exact performance of the contractual duty to purchase Miteff's property.)

The cause of action or property right of the real estate agent was impaired because of the requirement that there be an election by Miteff as a condition precedent. In such a circumstance the entitlement to maintain suit does not accrue, nor any limitation period begin to run, until satisfaction of the condition precedent. This principle of law has application. The Miteff plea of limitation was properly overruled for this reason.

Authorities cited by Guardian Title Company, of use in arriving at our holding were: 37 Tex.Jur.2d sec. 57, "Limitation of Actions", p. 178 "Conditions precedent" (1962); *Pyramid Life Ins. Co. v. Ellis County D. Dist. No. 1*, 136 S.W.2d 267 (Tex.Civ. App.—Waco 1940, writ ref'd); *Dunn v. Reliance Life & Accident Insurance Company*, 405 S.W.2d 389 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.); *Washington v. Martin*, 503 S.W.2d 330 (Tex.Civ. App.—Amarillo 1973, no writ); *Terry County Airport Board v. Clark*, 378 S.W.2d 932 (Tex.Civ.App.—Amarillo 1964, no writ); *Yeaman v. Galveston City Co.*, 106 Tex. 389, 167 S.W. 710 (1914); *Farmers' Nat. Bank v. J. W. Wallace & Co.*, 263 S.W. 1105 (Tex. Civ.App.—Texarkana 1924, no writ); and *Hinds v. Southwestern Sav. Ass'n of Houston*, 562 S.W.2d 4 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.).

■ Because of a lingering reluctance by the author of this opinion to conform to the expressions upon the law in all cases, though with no doubt of propriety of application to the circumstances of the instant case, we have left for final discussion our holding that even if Miteff is correct in the contention that the four-year statute of limitation operated to cut-off any right to sue on and after August 28, 1979, when the amended pleading was filed, he could not benefit in this case because the amendment—at least in part—was based upon and grew out of the same transaction or occurrence on which complaint of the original suit was founded. Therefore, the cause of action raised by the amendment was not subject to Miteff's limitation plea.

Tex.Rev.Civ.Stat.Ann. art. 5539b (1958) "Limitations as affecting amended and supplemental pleading" provides in pertinent part, as follows:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any

of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence...."

Here there was only one contract, one source of funds (the earnest money), one piece of property, and one breach of a real estate contract. Therein and because thereof occurred the ancillary transaction between Miteff and Guardian Title Company in capacity of substitute escrow agent for Miteff (in the place and stead of the real estate agent), where the funds were placed in Miteff's possession. The cause of action upon which Guardian Title Company declared by its original pleading was interdependent with the cause of action (originally that of the real estate agent) upon which it declared when the pleadings were amended on August 28, 1979. Because of this we hold that the alternative cause of action declared upon by the amended pleading was not a cause of action growing out of what would necessarily be a new transaction or occurrence. The provisions of Tex. Rev.Civ.Stat.Ann. art. 5539b (1958) would have application. There would be no limitation period to be counted between the date the original petition was filed and the date of the amendment thereof. The Miteff plea of limitation was properly overruled for this additional reason.

Cases cited by Guardian Title Company of use in arriving at our ruling and decision immediately above discussed, include the following: *Nacim v. Ibarra,* 310 S.W.2d 388 (Tex.Civ.App.—El Paso 1958, writ ref'd n. r. e.); *John H. Pelt Co. v. American Cas. Co. of Reading, Pa.,* 513 S.W.2d 128 (Tex.Civ. App.—Dallas 1974, writ ref'd n. r. e.); *Leonard v. Texaco, Inc.,* 422 S.W.2d 160 (Tex.1967); *Fidelity & Deposit Co. of Maryland v. Reed,* 150 S.W.2d 836 (Tex.Civ.App. —San Antonio 1941, no writ); and, where an assigned cause of action was joined with another, the case of *Camden Fire Ins. Ass'n v. Eckel,* 14 S.W.2d 1020 (Tex.Comm'n App. 1929, holding approved).

The judgment is affirmed.