## J. L. Huggins v. Clara T. Carey.

### No. 2465.   Decided April 18, 1917.

**1.—Charge—Double Damages—Promise of Marriage—Seduction.**

On the issue of damages for breach of promise of marriage, involving seduction of plaintiff and birth of a child, the jury were instructed that recovery for the breach of promise to marry should include "all damages sustained by her on account of injury to her feelings, affection, and wounded pride, as well as the loss of marriage"; and if plaintiff was seduced and got with child by such promise, "you may add to such sum such other and further damages as . . . you believe she has sustained by reason of such seduction . . . and the disgrace and humiliation . . . thereby, if any." This was erroneous as directing an award of double damages, the first quoted sentence permitted recovery for injury to her feelings and pride by the seduction; the second required the same damages for the seduction to be added to that recovery. (Pp. 361, 362.)

**2.—Same.**

It was proper to allow the jury, in assessing damages, to take into account, if they should find that there was a breach of promise to marry, the fact of seduction, though it is not permissible to allow damages for seduction alone. Doggett v. Wallace, 75 Texas, 353, followed. (P. 362.)

**3.—Same—Verdict—Remittitur.**

Under such charge (paragraph 1) a verdict assessing plaintiff's "actual" damages at $35,000.00 and her "special" damages at $10,000.00, did not segregate the damages for seduction from the sum so awarded as "actual" damages, and the error in the charge was not cured on appeal by requiring a remittitur of $10,000.00. The error affected both the "actual" and the "special" damages so assessed. (Pp. 362, 363.)

**4.—New Trial—Newly Discovered Evidence.**

Plaintiff having refused to disclose before the trial any information by which her claim to having borne a child as the result of seduction could be verified, evidence in disproof of such claim discovered and discoverable only through the disclosures made by her testimony on the trial should have led to the granting of a new trial. (Pp. 363, 364.)

**5.—Same—Impeachment of Witness.**

Though new trials are not granted for newly discovered evidence merely impeaching a witness, the fact that it disproves a part of plaintiff's case makes it sufficient ground for such relief, though its effect is also to impeach that party as a witness. Houston & T. C. Ry. Co. v. Forsyth, 49 Texas, 171, followed. (P. 363.)

**6.—Newly Discovered Evidence—Affidavit.**

That the statement of a newly discovered witness as to his evidence is attested by his "acknowledging" his written statement before a notary public, instead of swearing to it, is an objection coming too late when first raised in the Supreme Court on writ of error. (P. 364.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Clay County.

Huggins obtained writ of error on the affirmance, with remittitur, of a judgment obtained against him by Mrs. Carey in her action for breach of promise to marry.

*Davis & Davis, Allen & Allen, McLean, Scott & McLean,* and *Wil-*

*liams & Stedman,* for plaintiff in error.—In the second paragraph of its charge to the jury the court authorizes the assessment of double damages, and thereby fell in error. Daggett v. Wallace, 75 Texas, 355; 5 Cyc., p. 1014; 4 Am. & Eng. Ency. of Law, 2d ed., p. 898; Glasscock v. Schell, 57 Texas, 215.

It can not be said that the ten thousand dollars special damages was for the seduction, and that the thirty-five thousand dollars was for the value of the marriage and the humiliation and shame she suffered aside from the seduction.

Evidence tending to contradict that which plaintiff testified to and to show that she testified falsely, is not impeaching testimony within the meaning of the rule that a new trial will not be granted for the purpose of impeaching a witness. It is original testimony. Cyc., vol. 29, p. 918; Railway Co. v. Forsyth, 49 Texas, 171.

As to want of diligence to discover evidence, we cite the cases of Chicago, R. I. & G. Ry. Co. v. Groner, 100 Texas, 416, and International & G. N. Ry. Co. v. Howell, 101 Texas, 606, to the effect that a defendant is not required to prepare a defense before he is sued. The decisions of this court show that it has consistently reversed refusals of new trials by the trial courts when such a showing was made. That this power still belongs to this court, see Ables v. Donley, 8 Texas, 336; Gulf, C. & S. F. Ry. Co. v. Blanchard, 96 Texas, 617, 618; Mitchell v. Bass, 26 Texas, 372.

*R. E. Taylor, Hunter & Hunter, W. A. Hanger, W. F. Ramsey,* and *Theodore Mack,* for defendant in error.—Upon the proposition that the verdict should be read in connection with the pleadings of the case we cite Newcomb v. Walton, 41 Texas, 318; Dodd v̇. Gaines, 82 Texas, 432; Rushing v. Lanier, 111 S. W., 1090; Brown v. Montgomery, 31 S. W., 1080; Samples v. Wever, 121 S. W., 1131. In the petition plaintiff claimed forty thousand dollars actual damages, and by way of aggravation claimed an additional twenty-five thousand dollars for seduction and the birth of the child. The newly discovered evidence was impeaching testimony, and it is well settled law in Texas that a new trial will not be granted on such newly discovered evidence if its only purpose would be to contradict or impeach the testimony of the successful party. Houston St. Ry. Co. v. Sciacca, 80 Texas, 356, and cases there cited. As to all the newly discovered evidence see also: Jones Estate v. Neal, 98 S. W., 420, and cases there cited; Texas Cent. Ry. Co. v. Dumas, 149 S. W., 546, and cases there cited; Metzger v. Wendler, 35 Texas, 386; Scranton v. Tilley, 16 Texas, 193.

MR. JUSTICE YANTIS delivered the opinion of the court.

This suit was instituted in the District Court of Clay County, Texas, by Mrs. Clara T. Carey, defendant in error, against J. L. Huggins, plaintiff in error, to recover damages from the latter for an alleged breach of a marriage contract. The trial, which was by a jury, re-

sulted in a verdict in Mrs. Carey's favor. Huggins appealed to the Court of Civil Appeals for the Second District, where the judgment of the District Court was affirmed. 149 S. W., 390. A petition for writ of error was presented to this court by said Huggins, and the writ was granted October 9, 1912, this court then inclining to the view that the trial court erred in refusing to grant a new trial in order to secure the newly discovered evidence mentioned in the plaintiff in error's motion for a new trial; and also believing the court's charge on the measure of damages was erroneous.

The defendant in error, Mrs. Carey, at the time she alleges to have consented to marry Huggins, was a widow, twenty-eight years of age. Huggins was a bachelor, fifty-nine years of age. She was then residing in Fort Worth, Texas. He was residing in Clay County, Texas, on his ranch, and is shown to have been a man of considerable means. She alleges that she met Huggins on the 13th day of March, 1906, and became engaged on the 25th day of December, 1906, to marry him; that on or about the first day of September, 1907, he asked her to permit him to have carnal intercourse with her, renewing his promise of marriage; that she, relying upon his promise of marriage, assented, and on said date they did have sexual intercourse, and continued such course of carnal intercourse at different times under said promise of marriage until about March 15, 1908, when she became pregnant with child by Huggins, of which she informed him, and later, on or about the 10th day of December, 1908, she gave birth to a girl child. The trial was had on May 15, 1911, at which date the child was about two and one-half years old, according to her statement. She alleged that subsequent to the birth of the child, on each of his visits to her, they continued such illicit intercourse until about the first day of January, 1911, Huggins all the time assuring her that he intended to carry out his promise of marriage, and she relying upon such promise; that on or about the first day of January, 1911, Huggins, for the first time told her that he would not marry her, and would not fulfill his promise so to do; that by reason of the breach of his promise she suffered the loss of an advantageous marriage, Huggins being a man of great wealth and high social position, and that in addition thereto her love and affections had been disregarded and blighted, and her feelings had been lacerated, and her spirit greatly wounded, and she had suffered great distress, worry and humiliation; that she was greatly in love with Huggins, and anxious to marry him, and that in addition to the loss of an advantageous marriage, and the injury she sustained from distress and mortification, and as a result of said intercourse, and the birth of a girl child, she had been put to the expense since its birth, of supporting and maintaining it, with the exception of the sum of $25 per month paid by Huggins for about twelve months after its birth, and that she will be compelled in the future to incur the expense of maintaining and educating said child, and that when it becomes known, if it does, that she is the mother of an illegitimate child, this fact will

destroy her social standing among her associates and friends, and will cause them to look upon her with shame and disgrace, which will follow her through the remainder of her life. She prayed for actual damages in the sum of $40,000, and for special damages in the sum of $25,000.

The plaintiff in error, Huggins, answered her petition by a number of exceptions and demurrers. He also denied specially that he had promised plaintiff to marry her, or that he had said anything which could be construed into a promise of marriage; alleged that he paid her valuable considerations for all intercourse he had with her, towit: about $6000; that he furnished her money at various times, and paid her well for all that he got; he denied that any child was born that belonged to him, although he admitted that he furnished plaintiff with money to keep up a supposed child which plaintiff said she had given birth to at some place in California; that if plaintiff ever had a child "she had it of her own volition, and that he was not the father of same and had nothing to do with it"; that at the time he met the defendant in error he had gone to a rooming house in the City of Fort Worth, for the purpose of securing a room; that he was there introduced to and met her; that at said meeting there were no improper relations between them, but that their acquaintance became intimate, and that about seven or eight months later he did have intercourse with her at a rooming house or hotel in the City of Fort Worth, Texas; that prior to having intercourse with her he loaned her the sum of $3000 in cash, and that she voluntarily suggested and submitted to defendant her person, and declined to return or account for any of said money; that thereafter, on various occasions, he did have carnal intercourse with her, and on two different occasions he did pay her the sum of $500 at each time, and afterwards did send and give her various sums of money, in all amounting to $6000 or $7000; that she never at any time made any demand upon him to marry her until more than a year after he had ceased sending her any money, and had ceased paying her any attention; that he did not promise to marry her, and never intended so to do, and the first that he knew that she claimed any promise of marriage to have been made was more than a year after he had ceased giving her money, and paying her any attention, and after she had made repeated demands upon him for money, and after he had refused such demands; that she is a woman about thirty-five years of age; had roomed and boarded for many years at various boarding houses and hotels in the City of Fort Worth, Texas; that she had previously been married, and that she was a "grass-widow" at the time he met her.

The court charged the jury on the measure of damages, as follows:

"The measure of damages in this case is compensation to the plaintiff for the breach of the promise to marry her, which includes all damages sustained by her on account of injury to her feelings, affection and wounded pride, as well as the loss of the marriage of the defendant. And, if you further believe from the evidence that by reason of such promise to marry her, if such was made by the defendant, he seduced

her and begot her with child, and that child was born of said seduction, then, you may add to such sum such other and further damages as in your sound discretion you believe she has sustained by reason of such seduction and by reason of the disgrace and humiliation which she has thereby sustained, if any."

This charge is assailed by the plaintiff in error upon the ground that it authorizes the jury to assess double damages against him. We think the contention must be sustained. The first paragraph of this charge directs the jury to find compensation in favor of the plaintiff in a sum which includes "all damages sustained by her on account of injury to her feelings, affection and wounded pride, as well as the loss of the marriage." This is clearly broad enough to authorize the recovery of damages for the seduction, and injury to her feelings, affection and wounded pride resulting from the seduction, as well as resulting from the breach of the promise of marriage. The second paragraph authorizes the jury to assess, in addition thereto, such other and further damages as in their discretion they might believe she had sustained by reason of the seduction, if any, and by reason of the disgrace and humiliation which she thereby sustained, which, we think, in effect, were embraced in the first paragraph of the charge, and being in addition thereto, clearly authorized a double recovery. It was proper to allow the jury, in assessing the damages, to take into account, if they should find there was a breach of promise to marry, the fact of seduction, though it is not permissible to allow damages for seduction alone. Daggett v. Wallace, 75 Texas, 353, 16 Am. St., 908, 13 S. W., 49. But it is not, under any circumstances, proper to authorize the jury to assess damages twice on account of the seduction and the injured feelings resulting therefrom. This, we think, the charge of the court plainly authorizes. The jury assessed damages in the sum of $45,000. The Court of Civil Appeals, being of the opinion, as we are, that the charge authorized the recovery of double damages, required a remittitur of $10,000, in the belief that in this way the probable injury to the plaintiff in error would be cured. This holding was based on the fact that the jury, in the form of its verdict, allowed $10,000 to the defendant in error as "special damages." The form of the verdict was:

"We, the jury, find for the plaintiff, and assess her actual damages at thirty-five thousand dollars ($35,000) and special damages at the sum of ten thousand dollars ($10,000)."

We see nothing in the verdict to indicate a' segregation of the damages arising from seduction from the other damages found by the jury. So far as the verdict itself shows, when construed in connection with the charge of the court, there appears no segregation by the jury of any of the items of damage from any of the other items found. So far as appears from the verdict, in connection with the charge of the court, the finding of $35,000 actual damages, and the finding of $10,000 special damages, each embraces double damages. If so, to remit the

$10,000 finding would not cure the error, but would still leave a double recovery in the $35,000 finding. If the charge of the court had directed the jury to separate the damages resulting from the breach of promise and from the injury to her feelings resulting therefrom, from the damages which resulted from the seduction and the injury to her feelings resulting therefrom, calling one actual damages and the other special damages, then the verdict of the jury in its form, might with reasonable clearness reflect such separation, and a remittitur in such a case would probably cure the error, since it would be presumed that the jury obeyed the instruction of the court, and separated the items of damage as directed. But the charge does not undertake to require such separation. Why a separation was made by the jury, or what rule, if any, they followed in making it does not appear. It is true that the defendant in error, in her petition, alleged that she had been damaged in the sum of $40,000 actual damages, and $25,000 special damages, and prayed for such judgment. We can not conclude from this that the jury, when dividing the amount of damages assessed into two different lump sums, disobeyed the instruction of the court and refused to allow a double recovery as required by such charge. We, therefore, think the remittitur of $10,000 did not, with any degree of certainty, cure the injury caused by the charge in authorizing a double recovery of damages. This error in the charge requires a reversal of the judgment which was rendered against the plaintiff in error.

We also think a new trial should have been ordered by the trial court on account of the newly discovered evidence stated in connection with the motion for a new trial. The proposed evidence has a tendency to prove that Mrs. Carey did not in fact give birth to a child. It was proposed to prove that no nurse, or physician of the names given by Mrs. Carey on the witness stand, lived or had lived in the City of Los Angeles, in the vicinity fixed by her as being the place of the alleged birth. Also that no such physician was practicing in Los Angeles, and that no birth of the child was shown by the record of births in said city. It is true that this evidence partakes of the nature of impeaching evidence, but it is also original evidence tending to show that Mrs. Carey had not given birth to a child at all. She tendered by her evidence the issue as to birth, fixing the time and place, and names of the nurse and the physician who attended her. The proposed evidence was clearly in rebuttal of the issue she had tendered, and the fact that it was also impeaching evidence, would not render it insufficient to require a new trial. It must, of course, be, and is the settled rule that a new trial should not be granted to secure evidence whose only effect would be to impeach a witness. However, it must be admitted to be also well settled that though the newly discovered evidence impeaches and contradicts, this fact will be untenable as an objection to the proposed evidence, as to granting a new trial in order to secure it, where it tends to prove facts material to one of the issues in the case. Houston & T. C. Ry. Co. v. Forsyth, 49 Texas, 171. The proposed evidence was

original evidence, and tended to disprove the birth of the child, and was a proper basis for granting the motion for a new trial. The statement of Jno. P. Elms attached as an exhibit to the motion was not sworn to, but was only acknowledged before a notary public. If it had been excepted to when presented, it might have been proper to strike it out. But it was not excepted to when it was presented to the trial court, and was not objected to, on this ground, in Mrs. Carey's brief when the case was presented to the Court of Civil Appeals. We think such objection if made now would come too late. The judgments of the District Court and the Court of Civil Appeals are reversed, and the cause is remanded to the District Court.

*Reversed and remanded.*