**PFLUGER et al. v. SCHOEN. (No. 6375.)**

(Court of Civil Appeals of Texas. San Antonio. April 7, 1920. Rehearing Denied May 19, 1920.)

**1. Assault and battery ⬅️42—Whether attacks by two defendants constituted a joint attack held not a jury question.**

In a damage suit for assault and battery, where the attacks by the two defendants occurred at the same place, about the same time, as .a part of one general assault, court's treatment of the attacks as one or a joint attack, in submitting question of whether both were principals, *held* proper as against contention that question of whether they constituted two separate and distinct attacks should have been submitted to jury.

**2. Assault and battery ⬅️35—Evidence held to show defendants went to place of difficulty knowing of likelihood of trouble.**

In a damage suit for assault and battery, defended upon ground of self-defense, evidence *held* to support finding that defendants went to place of difficulty knowing that there was a likelihood of having a difficulty.

**3. Appeal and error ⬅️1001(1)—Jury finding supported by evidence conclusive.**

Findings of jury, when supported by evidence, are binding upon Court of Civil Appeals.

**4. Assault and battery ⬅️24(3)—Evidence of plaintiff's reputation as a man likely to carry out threats held inadmissible in view of pleading.**

In a damage suit for assault and battery, defended on ground of self-defense, where only actual damages were asked for, and where there was no pleading that plaintiff was a bad and dangerous man, who would be likely to carry out threats, exclusion of evidence that plaintiff was a dangerous man, likely to carry out any threat, *held* proper, though there was evidence of threats having been made.

**5. Assault and battery ⬅️34—That assaulted person was dangerous and had made threats may mitigate punitory damages.**

That man assaulted was a dangerous man, who had made previous threats, and who had reputation of carrying out threats, may be used in a proper case in mitigation of punitory damages, but not as justifying an unlawful assault.

**6. Assault and battery ⬅️24(3)—When evidence of character of assaulted person is admissible.**

Threats made and communicated are admissible under self-defense plea; but, before admitting evidence of the general character of the assaulted party as a justification, there must be a proper pleading putting it in issue, and

evidence to support it, it being the general rule that matters in justification cannot be pleaded under the general issue.

**7. Assault and battery ⬅️40—$3,750 verdict for assault and battery held not excessive.**

In action for assault and battery committed by two defendants with shovels, injuring plaintiff in the head and ribs, $3,750 verdict *held* not so large as to manifest passion or prejudice on the part of the jury.

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by Julius Schoen against G. C. Pfluger and another. Judgment for plaintiff, and defendants appeal. Affirmed.

White, Cartledge & Wilcox, of Austin, for appellants.

Dickens & Dickens, of Austin, for appellee.

COBBS, J. This suit was brought by Julius Schoen, appellee, against G. C. Pfluger and Eugene Priess, appellants herein, for damages for an alleged assault and battery committed by them acting together. as principals. It was alleged that defendant Eugene Priess, "by the use of great violence and force, struck the plaintiff over his head with an iron or metal handle of said shovel," and that G. C. Pfluger, "with great force and violence, crashed the flat or slightly curved iron or metal blade of same, about 8x12 inches in size, against the back and rear right side of plaintiff"; that, in thus assaulting plaintiff within a period of from five to ten minutes, the defendants inflicted injuries upon plaintiff causing actual damage; and plaintiff prayed for judgment in the sum of $10,000 actual damages.

After the usual form of demurrers, general and special, and general denial, defendants pleaded that if either made an assault it was in self-defense, and further answered:

"For further answer herein, if such answer be required, defendants represent that, prior to the occasion of the alleged assault upon the plaintiff, the plaintiff had threatened personal violence to these defendants, which threats had been communicated to them; that on or about October 14, 1918, the defendant Eugene Priess sent certain laborers to a tract of pasture land owned and controlled by him, for the purpose of erecting an earthen tank thereon; that the plaintiff came to the place where the said laborers were preparing to make said tank, and by threats of personal violence upon said laborers prevented them from performing said work, and plaintiff on said occasion renewed his threats of personal violence to these defendants, which threats were communicated to them by said laborers; that on or about October 15, 1918, these defendants went to the site selected for the building of said tank for the purpose of beginning the construction of same; that thereupon the plaintiff, Julius Schoen, came to where these defendants were

preparing to begin the construction of said tank, and forbade these defendants to proceed with said work, and threatened personal violence toward these defendants unless they desisted from the construction of said tank, and by words and threats, and by placing themselves in the way of the teams and workmen engaged in such work, obstructed the work defendants were endeavoring to do; that plaintiff, upon ascertaining that defendants intended to continue the work of the construction of said tank, and in pursuance to the threats he had previously made, advanced upon and attacked these defendants. Defendants allege that if they, or either of them, assaulted or struck the plaintiff, then they each allege that at such time the plaintiff was advancing upon such defendant, and was about to make and was making an attack upon such defendant, which acts, taken in connection with plaintiff's threats theretofore made, as aforesaid, and such defendant's knowledge of the character and disposition of plaintiff, and the other attendant circumstances, caused such defendant to believe that plaintiff was about to inflict physical injury upon him, and that such assault, if any was made by such defendant, was in necessary self-defense.

"Each of the defendants allege, respectively, in the alternative, that if either of them assaulted or struck the plaintiff, then that at such time the plaintiff was advancing upon the other defendant herein, and was about to make and was making an attack upon such other defendant, which attack, or apparent attack, taken in connection with plaintiff's threats theretofore made, as aforesaid, and such defendant's knowledge of the character and disposition of plaintiff, and the other attendant circumstances, caused such defendant to believe that plaintiff was about to inflict physical injury upon such defendant, and that such assault, if any, was made in the necessary defense of such other defendant."

The court overruled all the exceptions and demurrers, to which defendants excepted, and on request of appellant the case was submitted on special issues.

The charge of the court and special issues, after explaining the law of self-defense, and the law of principals, submitted to the jury, were as follows:

"Question No. 1. Were the defendants acting together as principals at the time they struck the plaintiff, as the term 'principal' has been herein defined and explained by the court?

"Answer. Yes.

"Question No. 2. Was the defendant Gottlieb C. Pfluger acting in self-defense at the time or times that he struck the plaintiff with a shovel, as the term 'self-defense' has been herein defined and explained by the court?

"Answer. No.

"Question No. 3. Was the defendant Eugene Priess acting in self-defense at the time or times that he struck the plaintiff with a shovel, as the term 'self-defense' has been herein defined and explained by the court?

"Answer. No.

"Question No. 4. What sum of money, if cash in hand paid to the plaintiff at this time, will fairly, justly, and reasonably compensate him for the injuries received?"

"Answer. $3,750.00."

On the answers to these issues judgment was entered in favor of appellee against appellants for $3,750, as found by the jury.

The testimony fully supports the assault and battery and the injuries resultant therefrom, but, on the facts established, appellants' defense is that they were acting in self-defense; that they were not acting together as principals in the fight; that during the time from its beginning to its close there had been a cessation of hostilities, and renewed by appellees or some one of them, and not appellants and in each case each pleaded separately he was acting purely in self-defense, and that it was not a continuous engagement from the beginning to the end.

The first issue the court submitted to the jury was to find whether the defendants were acting together as principals.

It cannot be denied, and is not, that appellants, or one of them, struck appellee, whether done in self-defense or in a continual fight, slightly abated, then again renewed. Appellants do not pretend to deny the assault, but claim they were fighting in self-defense each, and not as principals acting together in a common assault, but each man was for himself in defense of his person, and, while there was an intermission in the battle, it was again renewed by the appellees or some of them.

The controversy began over the digging of a tank on pasture land used in common between appellee and defendants, best explained by testimony of G. C. Pfluger, in effect, that the place on which appellee resided belonged to his mother's estate. The farm was rented to him, but not the pasture where the tank was to be constructed, and the place where the fight occurred. He went with Priess and others to the place where the tank was to be constructed and began the work. Already appellee had sent threats of trouble if the tank was attempted to be constructed. It is not necessary to detail the evidence as to how the fight began at the tank, but the appellants went to the tank together to build it; and the appellee no doubt went to the tank together with his son, to resist its construction, and while there the fight began and the injuries were inflicted. There was evidence enough to support the finding of the jury that they were principals and acting together on one side of the engagement, and appellee and his son on the other. The court also fairly submitted the issue as to whether Gottlieb C. Pfluger was acting in self-defense, and the jury found he was not; and likewise whether Eugene Priess was acting in self-defense, and the jury found he was not. The issues thus submitted, were the appellants acting as principals or whether in self-defense, and upon each of those issues the

jury found against appellants. Whether the testimony is satisfactory or not, there was testimony pro and con, and the jury found against appellants, and the court refused to set it aside.

The appellants, however, in their first assignment, complain there was error in the first question submitted to the jury, because it assumes that the defendants were acting together, each time, when either of them struck plaintiff. The appellant does not make his position very clear on this point, and cites no authority, because he says none is necessary. We do not see very well how the court could do otherwise, in the light of the testimony, than ask the jury if they were acting together as principals within the meaning of principals as the court had defined and explained to them. They were all engaged in a general assault, once begun, was continuing until separated. It may have been sporadic from time to time during the engagement, and hostilities ceased a moment then started again—up and at it—but it was the same old fight. It was a common engagement—upon the one side were appellants, and the other side the appellee.

[1] We agree with appellant that the court treats of the so-called several attacks by the respective defendants upon plaintiff as one or a joint attack, and that seems the correct view, and that was not invading the province of the jury in submitting the issue as done.

[2] There is ample evidence to support the findings of the jury, which were based upon testimony showing that the defendants went together to build the tank, knowing that there was a likelihood of having a difficulty. It is true they perhaps had as much right on the ground as appellee had. It is not for us to say who were the aggressors and who began the assault from which appellee sustained his injuries—it is as far as we are permitted to go to ascertain whether there was adequate testimony on the whole case sufficient to show that the findings are justified therefrom, and did the charge correctly submit the issues.

[3] We think it was proper for the court to submit those issues to the jury just as was done, and their findings, being supported by the evidence in this case, are binding upon the court.

Appellants' second assignment and proposition are practically the same as his first. He is complaining that the evidence tended to show two different assaults made, one by defendant Priess and one or more by defendant Pfluger, under different circumstances. These engagements, as shown, occurred at the same place, relating to the same thing, by the same parties, and nearly the same time, the parties not having left the disputed territory; there was no appreciable time intervening, no retreating or leaving the battle ground, but renewed by the same parties if it ever stopped. It was not incumbent upon the court to submit "to the jury the issue of whether or not the defendants were acting together at the time each assault was made." It cannot be denied that the jury was entirely justified in finding defendants were principals, and certainly, in determining that situation, it followed they were acting together. There was testimony showing that "the fight, all of it, happened right along together."

Appellants' assignments from second to thirteen are practically to the same effect, complaining of error committed by the court in refusing to give special charges to the jury, and complaining that the court refused special issues to the jury, all predicated upon the theory that separate and unrelated assaults were committed by each of the defendants upon plaintiff.

The court fairly submitted the issue as to principals and as to self-defense of each defendant.

There was no reason to justify the court in another and variant form, at the request of appellant, to again submit the requested charges and issues upon the theory that the assault and battery they committed upon appellee was divisible and separable into clearly distinct and unrelated assaults by each appellant. Besides being cumulative of the court's charges on the same subject would not aid the jury in the determination of the issues so plainly already submitted by the court.

[4] Appellants complain in the fourteenth, fifteenth, sixteenth, and seventeenth assignments substantially of the same ruling, but in different terms, that the court erred in not permitting defendants and each of them to show the general reputation of appellee in the community in which he lived as a quarrelsome, violent, and dangerous man, likely to carry out any threat made, and known to appellants, and which influenced them in assaulting appellee. This does not seem to be the theory upon which appellants presented their case by their pleadings. Their plea was mainly self-defense. There was no pleading charging the bad reputation of appellee as one who would likely assault them as threatened that justified any assault upon him by appellants.

The suit was to recover only actual damages for the alleged injuries inflicted on him. It was not sought to recover any punitory damages. In this action the issue was confined properly to the actual injury inflicted, and the defense of the right to defend from an unlawful assault, not upon any right appellants may have had to attack appellee by reason of his bad and dangerous character, because of threats communicated to them of appellee's intention to put them in execution. It would make no difference, in such a case of violent and unlawful assault, whether made upon a dangerous man, or upon one who

had made previous threats, the effect would be the same so far as actual damages are concerned.

[5] While an assault upon a dangerous man, one who had made previous threats such as was supposed from his reputation he might carry out, may be used in a proper case in mitigation of punitory damages, it cannot be used for any purpose as justifying an unlawful assault. It is true the evidence showed that Priess, one of the defendants, in effect stated they went to the place "with our minds made up to build that tank regardless of Julius Schoen's objections"; but this does not show of itself they intended an attack. It was a circumstance to go to the jury in connection with the appellants' theory of self-defense. In the absence of any allegation on the part of appellee to recover punitory damages, or in the absence of any issue to that effect submitted to the jury, we cannot see how the character of appellee, as a person likely to put in effect threats made, can be material upon any issue except of self-defense. It is contended that upon the plea of self-defense the reputation of the assaulted party for being a dangerous man, and one likely to put in effect threats made, when communicated, are admissible to show whether or not defendants, or either of them, acted upon a reasonable apprehension of danger, and whether they, or either of them, used more force than was necessary under the circumstances raised by the pleadings and the evidence. Under the facts offered, we do not believe that the court was justified in giving any other charge on self-defense than was given. It was broad enough for the jury to determine from the evidence whether the appellees intentionally provoked and brought on the difficulty, and made any assault upon appellants or any of them. There was plenty of evidence introduced on the trial of appellee's threats communicated to appellants, of which they had the benefit on their plea of self-defense.

In the sixteenth and seventeenth assignments complaint is made that the court erred in not permitting appellants to prove the reputation of appellee in the community in which he lived as to whether he would likely carry out a threat made by him. Such threats were already introduced in evidence. Appellants had no pleading to justify the issue involving the dangerous character of appellee as one likely to put the threats in execution. It is held in March v. Walker, 48 Tex. 377:

"The law of self-defense is the same as in a criminal prosecution, with the exception of the rule of evidence which, in a criminal cause, gives the defendant the benefit of a reasonable doubt. That doubt, however, is as to the facts, not as to the extent of the right. The stage of the difficulty at which self-defense ceases is just the same, whether the question be investigated civilly or criminally."

Judge Hodges says, in Chapman v. Hargrove, 204 S. W. 380:

"The rule recognized as proper in presenting the plea of self-defense in criminal prosecutions is not applicable to civil suits for damages like this. In criminal prosecutions the purpose of the law is to prove and punish conduct prompted by an evil motive; and in determining the animus of the accused in beginning an aggressive defense of himself it is necessary to look at the surroundings from his standpoint. But in a civil action for damages resulting from an assault the purpose is compensation for an injury, and the aggressor cannot escape upon a plea of self-defense by merely proving that he thought he was about to be attacked, when no attack was contemplated by the injured party. To justify a defensive assault provoked by deceptive appearances the defendant must show not only a situation which creates a reasonable apprehension of danger to himself, but one for which the assaulted party is culpably responsible. Otherwise the injured party might be made to suffer for conditions over which he had no control. In an action for actual compensation the injured party has some right to have the offensive conduct viewed from his standpoint. The assailant who strikes an unnecessary blow cannot in every instance shift the consequences of his mistake to the injured victim." Hall v. Hayter, 209 S. W. 437.

The appellant had full benefit of all the threats made on self-defense. There was no allegation made or any proof to the effect that appellee was a bad and dangerous man, who would likely carry out those threats, to justify the assault. In fact, when appellants went out to dig the tank they knew appellee would oppose it. They went voluntarily to do this work in utter defiance of appellee. They did not regard appellee or his rights in the least, if any he had. The effect of the finding of the jury is they were the aggressors, and not acting in self-defense. We can see no legitimate evidence of self-defense they were deprived of under their pleading. There was no act done by appellee or attempted that placed appellant's life or person in jeopardy such as would have justified the belief he was in great danger so as to strike down the appellant in the defense of his person, as held justified under circumstances discussed in Horbach v. State, 43 Tex. 242. Not having placed the defense upon a pleading declaring appellee to be a dangerous and bad man, one likely to carry out threats made and communicated of his intention to do great bodily harm and injury, and at the very time was attempting to carry those threats into execution in justification of the assault, it was not error to deny such testimony. H. & T. C. R. Co. v. Bell, 73 S. W. 61. Here appellee nowhere pleaded by way of justification that the assault was made because of the threats made by appellee, a dangerous man, likely to do appellants great bodily harm.

[6] Threats made and communicated are

made admissible under the plea of self-defense. But before admitting evidence of the general character of the assaulted party as a justification thereof, there must be proper pleading putting it in issue, and evidence to support it. As said in Hardin et al. v. Hodges, 33 Tex. Civ. App. 156, 76 S. W. 218:

"The rules of pleading in civil, and not criminal, cases apply to this character of case (Shapiro v. Michelson [Tex. Civ. App.] 47 S. W. 746); and the general, if not universal, rule is that matters in justification cannot be given in evidence under the general issue, but that the acts relied upon as a justification must be specially pleaded, whether son assault demesne, molliter manus imposuit, or other similar plea (McGehee v. Shafer, 9 Tex. 20; Isley v. Huber, 45 Ind. 421; Schroder v. Ehlers, 31 N. J. Law, 44; Likes v. Van Dike, 17 Ohio, 454; Hathaway v. Rice, 19 Vt. 102; Bowman v. St. John, 43 Ill. 337; Lunsford v. Walker, 93 Ala. 36, 8 South. 386; Kerwich v. Steelman, 44 Ga. 197; Illinois Steel Co. v. Novak, 184 Ill. 501, 56 N. E. 966; Norris v. Casel, 90 Ind. 143; Wilken v. Exterkamp [Ky.] 42 S. W. 1140; Atkinson v. Harran, 68 Wis. 405, 32 N. W. 756; Hathaway v. Hatchard, 160 Mass. 296, 35 N. E. 857). In the absence of such plea, the evidence may be admitted, and considered in mitigation of exemplary damages (McGehee v. Shafer, 9 Tex. 20; Shook v. Peters, 59 Tex. 393; Rateree v. Chapman, 79 Ga. 574, 4 S. E. 684; Martin v. Minor, 50 Miss. 42; Davis v. Franke, 33 Grat. 413); but cannot be considered as a justification, even though admitted without objection (Norris v. Casel, supra). Here the justification relied upon, which is in the nature of a plea in confession and avoidance, is that the assault and battery occurred in the reasonable and necessary defense of the persons and property of the defendants. The court would not have been warranted in submitting the special charge under consideration, and thereby have instructed a verdict for defendants, if they were justified upon a different ground. The avoidance must be upon the ground contained in the confession." McCormick v. Schtenck, 59 Tex. Civ. App. 139, 130 S. W. 720.

The appellant's eighteenth assignment complains that the amount of the judgment is excessive and unconscionable, etc. There is no testimony set out under the statement, and we are sent to pages 32 to 38 of appellant's brief to discover it. All the witnesses testified as to scars on appellee's head, bruises on his back, body, and ribs, and swollen places caused from the assault. Dr. August Kuhn testified:

"I looked at his back and shoulder. I did not discover any abrasions, or bruises, or signs of any lick or hurt on his back. He told me he was struck in the back with a shovel, but then his back didn't give any sign of it. I cannot recall of treating any wounds on his head. I didn't do anything for him but strip him with adhesive plaster; that is the only thing that I did for him. Several days later he came back to see me again, and said it was too tight, and his wife tore it off, and he wanted me to put it back again, and I put it back again. As to whether at that time I noted any bruises on his back or signs of where he had been struck, I don't recollect. I didn't make a memorandum of it either. I do not recollect of telling him that his ribs had been torn loose from his back. I did not tell him that. I did not tell him that his ribs had been broken loose from his backbone. I couldn't have told him that. As to what I told Mr. Julius Schoen about whether there were any bruises, or signs of any lick on him, I told him that there was no visible sign there; that he might have been hurt, but then it didn't show. The only thing I know about any hurt was what he told me. When he came back the second time I do not recall of seeing any bruises or signs of any licks on him. * * *"

Appellee's wife testified as to the cuts and other injuries and suffering, and stated:

"There were three big cuts in his head. One cut was on the right side—that was the biggest; and he had one on the left side, right in front here (indicating), and one about the middle of the head. The cut on the right side of his head was about two and one-half or three inches long; on the left side it was smaller, and on the top of the head it was not so big—it was about an inch. I looked closely at these cuts, and I put some medicine on it, tried to stop it from bleeding, and it was pretty deep; it went all through his skin all right. I put some medicine on those cuts—I put some pulganic. As to whether or not he was hurt at any other place, on his back was right green—right blue. I looked at his back, and I rubbed it with some liniment from Watkins' medicine. As to what part of his back I rubbed with this liniment, will state against the right side of his back, and there is where he had a big cut, too. The cut was right on the side, the side here over his ribs; that cut was about two inches long; the cut was just across them ribs—just cross-ways. I did not feel of his ribs; I could never touch his ribs; he just hollered so all the time; he would just holler for his back all the time. As to whether I found any other injuries on him except his head and his side—well, no, what was there I could see, but what he suffers now. That was all I could see on the skin at that time, but then where it was swollen on his back—where it was swollen; there was some swelling right on the backbone, right close to the backbone. The swollen place was pretty big, and then one place he had, a little above the shoulder, was about as big as a hand where it was right red—bruised. That swelling stayed on his shoulder until Doctor Kuhn pasted it up. My husband went to the doctor the second day and had it pasted up."

The son testified to the same effect.
Appellant himself testified:

"Eugene Priess hit me with the iron handle of the blade of the shovel over my head so the blood ran over my whole face, * * * and Mr. Priess, when I tried to get my boy and Mr. Pfluger apart, hit me all the time over from behind my head. * * * Mr. Pfluger hit me right between my shoulders the first crack. It was

a heavy lick; so heavy like he could strike. He struck me with the iron part of the shovel—with that corner; then he struck me right here (indicating) right along over my ribs, on my back—to the right side, right next to my backbone. He struck me three times on the right side; those three blows bruised me; my ribs were knocked off from the backbone; there were three ribs knocked off from the backbone. Those ribs were broken loose by the blow of the shovel. Those ribs are not well yet. I went first to Dr. Kuhn for treatment, and he treated me twice. * * * The treatment that Dr. Kuhn gave me did not relieve my pain; he done me no good. I then went to Dr. Jackson, at Manor, and he put another plaster on, and put some medicine over my body. Dr. Jackson went to France. Dr. Jackson treated me twice. After Dr. Jackson left, you know, Dr. Jackson told me I can go to Dr. Smartt, he can do the treatment to me."

[7] There is no testimony here or act done showing improper conduct on the trial of this case to justify us in either cutting down the verdict or granting a new trial. We do not think the sum awarded is so large as to manifest passion or prejudice on the part of the jury. As to measure of damages, see Hall v. Hayter, 209 S. W. 437.

Appellant complains that the court erred in not granting him a new trial because he did not discover until the trial that appellee had been treated for the injuries by Dr. N. R. Jackson, a practicing physician, who was then absent from the state in the government service in France. The affidavit of Dr. Jackson is set out, and is of a negative character, and is also cumulative to such an extent that we do not believe the court abused its discretion in overruling the motion. Strachbein v. Gilmer, 202 S. W. 333; Jones v. Wichita Valley Ry. Co., 195 S. W. 890; Huggins v. Carey, 108 Tex. 358, 194 S. W. 136.

We have examined each and every assignment presented, and each and every proposition made thereunder that we thought should be discussed, and find no reversible error assigned, and overrule them all.

The judgment is affirmed.

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes