## LAWLER et ux. v. DUNLAP et al.
### No. 909.

Court of Civil Appeals of Texas. Waco.

May 1, 1930.

Callicutt & Upchurch, of Corsicana, for appellants.

Lovett & Lovett, of Corsicana, for appellees.

BARCUS, J.

In 1917, appellee Mrs. Dunlap married Bill Lawler and they had three children, a girl, Vanita, now ten years of age, one boy nine, and one boy seven. She and Bill Lawler lived together until December, 1926. Mrs. Lawler abandoned her husband at said time by reason, as she stated, of his extreme cruelty, dissipation, and immoral life. In December, 1927, Bill Lawler killed appellee's father, for which Lawler was convicted in May, 1927, and sentenced to the penitentiary for forty-five years. After the killing appellee Mrs. Dunlap instituted a suit for divorce. She was granted a divorce in May, 1928. The cause was appealed and reversed by the appellate court on March 14, 1929. On June 4, 1929, Bill Lawler died. Mrs. Dunlap testified that she married H. L. Dunlap first on March 23, 1929, and then married him a second time June 29, 1929. On July 2, 1929, appellees filed this suit against appellants for the possession of the three children. Appellants were served with citation on July 10th, and the cause was tried on July 17th to the court, and resulted in judgment being rendered by the trial court awarding said children to appellees.

Appellants, by a number of assignments and propositions, present the two controlling issues in the case: First, that the evidence did not authorize or justify the court in awarding the children to appellees; and, sec-

ond, that the trial court committed error in refusing to set the judgment aside and grant a new trial by reason of newly discovered evidence. The evidence shows without controversy that appellants are well qualified in every way and that they would take care of and raise said children.

A number of witnesses testified that prior to December, 1926, when she left her husband at Dawson, Tex., appellee had a good reputation and character and was a proper and fit person to have the care, custody, and control of her children.

Appellee testified that in August, 1926, a man by the name of Bill Hickman drove by her home and threw her a note; that she had not known Hickman prior to that time and did not see him thereafter until December 11, 1926; that she wrote him a letter, and he came on said date and she went with him to Duke, Okl., in a stolen car. She testified that she did not know the car was stolen, neither did she know whether or not Hickman was a married man; that they traveled all night, having left Dawson at 2 in the afternoon, and reaching Duke, Okl., at 4 p. m. the next day; that she spent three nights in Oklahoma, but did not at any time have any improper relationship with Bill Hickman, and neither did she sleep with him; that Hickman was arrested and brought back to Texas, and that she testified against Hickman, and that he was sent to the penitentiary for theft of said car; that after she returned from Oklahoma she spent five weeks with her father near Dawson, at which time he was killed by her husband, Bill Lawler; that thereafter she instituted a suit against Bill Lawler for a divorce. She testified that when she went with Bill Hickman in December, 1926, she left her three children, the youngest at that time being two years of age, with appellants, the grandparents of said children and the father and mother of her husband, Bill Lawler. The children have since said time been in the care, custody, and control of appellants. Appellee Mrs. Dunlap further testified that after she filed her suit for divorce, she was in destitute circumstances and went to work in Waco as a chambermaid, part of the time in a private residence and part of the time in a hotel, for $10 per week; that she had no property of any kind; that after she obtained her divorce in May, 1928, she worked in Waco in a café as a waitress, where she met H. L. Dunlap, who was working in said café; that in November, 1928, she went to San Antonio and worked for awhile as bookkeeper for a furniture company, and then opened a lunchroom; that about two months after she went to San Antonio, H. L. Dunlap went to San Antonio, and she and Dunlap were married on March 23, 1929; that her attorney told her she was free to marry, although she knew the divorce suit had been appealed; that she lived with Dunlap as his wife; that when she learned she had no right to marry because her former husband was still living and the divorce case had been reversed, she and Dunlap separated and she did not live with him thereafter until June 29, 1929, when she and Dunlap were again married. She filed this suit on July 2d, three days after she married Dunlap on June 29th. She testified that Dunlap was twenty-seven years old and was working for the Royal Furniture Company in San Antonio, getting $125 per month; that he did not have any property of any sort; that they were living in San Antonio in a private residence on Nevada street.

E. S. Harris testified that he knew appellee Dunlap as a hard working, industrious man, and that he (Harris) was and had been for three years working for the Royal Furniture Company, and that H. L. Dunlap was and had been since January, 1929, working for said company at a salary of $100 per month.

No other testimony was offered by appellees as to their financial condition.

It was shown without controversy that appellee Dunlap was, in 1923 or 1924, convicted of some misdemeanors in McLennan county and sentenced to one year in jail; that in 1925 he pleaded guilty to four felonies in Navarro county and was sentenced to two years in the penitentiary in each case, same running concurrent, and that he served his time; that after he got out of the penitentiary he was arrested in San Antonio for petty theft and vagrancy. There were four witnesses from Duke, Okl., who testified that Bill Hickman and appellee Mrs. Dunlap were introduced as man and wife, and that the three nights they spent in Oklahoma they occupied the same bed and lived as man and wife.

In the motion for new trial appellants attached affidavits from the county judge and sheriff in Oklahoma that appellee Mrs. Dunlap told them that she had abandoned her husband and children because she loved Bill Hickman, and that she and Bill Hickman slept on a pallet on the road going from Texas to Oklahoma, and had been occupying the same bed in Oklahoma. Also an affidavit from Mr. Wood that appellee Dunlap was not working for the Royal Furniture Company in San Antonio; that he only worked for said company a short time on strictly a commission basis, and that he never sold a single order for the company that was accepted. Also affidavits of Mr. Allen, Mr. York, and Maggie Brewington, to the effect that appellees were living at the rear of the lunchroom that they were running at 1017 East Commerce street in San Antonio, which was also at the rear of a barbershop. Also pictures of the lunchroom and living rooms were attached, showing a small lunchroom and two small adobe living rooms, and

indicated that they were a very unsuitable place for children to live. Also affidavit of Mr. Worden, manager for the Royal Furniture Company, that E. S. Harris never worked for said company.

We think it was error for the trial court to overrule appellants' motion for new trial because of newly discovered evidence. Huggins v. Carey, 108 Tex. 358, 194 S. W. 133, 135; Vick v. Schaff (Tex. Civ. App.) 260 S. W. 916, and authorities there cited; Wichita Falls, R. & Ft. W. R. Co. v. Baker (Tex. Civ. App.) 242 S. W. 273. Evidently, the trial court, in determining what was for the best interests of the children, took into consideration the earning capacity of appellees and the fact that appellee Dunlap had a lucrative and steady position in San Antonio, and the place and kind of house that appellees were occupying. Appellee Mrs. Dunlap and E. S. Harris testified that Dunlap was making $100 to $125 a month and was and had been working steadily for the Royal Furniture Company. Dunlap did not testify. If the affidavits attached to appellants' motion for new trial are true, Dunlap was not working for said company and had never worked for it on a salary. Appellee Mrs. Dunlap had further testified that she was living in a private residence on Nevada street. The affidavits attached to the motion for new trial show that she and her husband were living in two small adobe rooms in the rear of the lunchroom she was operating and at the rear of a barbershop on one of the main streets of the city—evidently a very unsuitable place to carry three small children.

Appellee contends that said testimony was only cumulative, or of an impeaching character, and was not such as would justify or authorize the trial court in granting a new trial. This has been many times held adversely to appellees' contention. As was well said by the Supreme Court in Huggins v. Carey, supra: "It is true that this evidence partakes of the nature of impeaching evidence, but it is also original evidence. * * * It must, of course, be and is the settled rule that a new trial should not be granted to secure evidence whose only effect would be to impeach a witness. However, it must be admitted to be also well settled that, though the newly discovered evidence impeaches and contradicts, this fact will be untenable as an objection to the proposed evidence, as to granting a new trial in order to secure it, where it tends to prove facts material to one of the issues in the case."

Appellees further contend that since the cause was tried to the court and he heard and read the affidavits attached to the motion for new trial, it may be presumed that he took said testimony into consideration in his action in overruling the motion for new trial. In Cragin v. Henderson County Oil Development Co. (Tex. Com. App.) 280 S. W. 554, the court laid down the rule that if the motion for new trial was sufficient to require the same to be granted, it was the trial court's duty to so do, and that it was not authorized in passing on said motion to hear evidence with reference to the truth or falsity of the new evidence contained therein.

As hereinbefore stated, the cause was tried one week after appellants had been notified of the filing of the suit. They obtained a considerable amount of testimony from Oklahoma, San Antonio, and Waco. There is no contention that the newly discovered evidence embraced in the motion for new trial could have been discovered sooner or in time for presentation to the court during the trial. By reason of the character of the new testimony embraced in the motion for new trial, as viewed with reference to the original testimony offered, same on another trial would probably produce a different result.

The judgment of the trial court is reversed, and the cause remanded.