## ELLIOTT v. TEXAS PACIFIC COAL & OIL CO.

### No. 1371—5528.

Commission of Appeals of Texas, Section A. June 25, 1930.

W. D. McFarlane, of Graham, for plaintiff in error.

W. L. Scott, of Graham, for defendant in error.

CRITZ, J.

This suit was instituted in the district court of Young county, Tex., by Texas Pacific Coal & Oil Company, hereinafter designated plaintiff, against Mrs. Dollie N. Elliott, hereinafter designated defendant, to recover on a paving certificate issued by the city of Olney, Tex., to Thurber Construction Company, and assigned by it to the plaintiff. The plaintiff sought judgment for the amount of the certificate and a foreclosure of an alleged statutory paving lien. The defendant contested on the grounds: (a) That the property sought to be foreclosed on was the homestead of the defendant at all times involved, and she never at any time authorized said paving to be done and never signed any character of contract pertaining thereto; (b) that the city of Olney was never legally incorporated, and (c) that the city of Olney had never legally adopted the state paving law.

Trial was had in the district court before a jury, but on the conclusion of the evidence the trial court gave a peremptory charge for

plaintiff, and verdict was returned accordingly. Judgment was then rendered for the plaintiff for the amount sued for, with foreclosure of the alleged paving lien. This judgment was affirmed by the Court of Civil Appeals. 19 S.W.(2d) 442. The case is now in the Supreme Court on writ of error granted on application of the defendant.

We will first consider the defendant's contention that the property foreclosed on was her homestead. As already stated, the trial court directed a verdict against her, thereby holding, as a matter of law, that the property was not a homestead. The Court of Civil Appeals also holds to the same effect. The effect of these holdings is to say that there is no evidence in the record which would in law sustain a fact finding that this property was a homestead. In testing the correctness of this holding we must view the facts in their most favorable light for the defendant.

The defendant claims that the property in question is the homestead of a family, and that the family consists of herself and her granddaughter. The only witness heard on this question was the defendant. The Court of Civil Appeals has quoted very extensively from her testimony, and we refer to that opinion in this connection. We have carefully read the entire statement of facts, and the testimony considered in its most favorable light on behalf of the defendant establishes the following facts:

That the defendant was 79 years old and had been divorced from her husband about 23 years at the time of the trial; that by reason of such divorce she had been a single woman during all of that time; that the granddaughter in question was about 12 years old at the time of the trial; that at the time this child was born her mother, who was a daughter of the defendant, was a nurse, and had to make her own living; that at the time the child was born the doctor put the child on defendant's bed and said: "Grandmother, that is your child." "I said, is that right, and the mother said, I guess it is, you raised me, and here is the child." That for the first two years thereafter defendant kept the child with her all of the time, paying all of its expenses, and caring for such child as her own; that after that the child has lived with defendant part of the time and away from her part of the time, having lived with defendant in all about 5 or 6 years; that when defendant was up and able to care for the child it was with her, but when she would get down sick, or be unable to care for the child, the mother would come and get her; that the child lived with the defendant before the property was purchased at times and away from her at times; that the child had not lived with the defendant for some 3 or 4 years at the time of this trial, but had been living during all of said time at Fort Worth, where she was under the care, custody, and control of the mother, who was providing her a place to stay and some one to look after her when she (the mother) is out nursing; that the child has visited the defendant twice since she has owned this property, but never lived on the premises with the defendant; that no one has ever lived with the defendant since she bought the property, but twice during her occupancy the child has visited her and at times other members of defendant's family have visited her for short intervals; that defendant had been living on this property somewhere between 1½ and 2 years at the time of the trial, the date of purchase not being accurately shown; that defendant claims the child because of what happened when she was born, but has never formally adopted her; that the child has not been with the defendant for the past several years because she (defendant) was unable to care for her; that at the time of the trial, and for several years prior thereto, and at all times the defendant has owned this property, the child has lived at Fort Worth, Tex., where she is provided a home and some one to look after her by her own mother, and has only visited defendant twice during three or four years preceding the trial. The record justifies the conclusion that the child is under the control and supervision of her own mother at Fort Worth, Tex., and that such has been the condition of affairs during all of the time that the defendant has owned or occupied this property.

In our opinion the above facts do not remotely raise the issue of a homestead. It is conclusively shown that Mrs. Elliott has no homestead interest in this property by reason of any survivorship rights, as her own testimony shows her to be a single woman by reason of a divorce, and that she has acquired this property since the divorce. Her testimony taken as a whole further shows conclusively that she has no family, and that the grandchild in question has been living at Fort Worth with her own mother for several years where she (the grandchild) has been under the care, control, and supervision of the mother and supported by her. This grandchild was never legally adopted by the grandmother, and the defendant's own testimony shows that she has been unable to care for her at all times since she has owned this property. There is absolutely no rule of law nor any decision of this state that would constitute the defendant and her said grandchild a family since she here owned or occupied this property.

Defendant contends that she denied under oath the corporate existence of the city of Olney, Tex. An examination of the record shows that she did not do so, but merely specially excepted to plaintiff's petition on the ground that there were defects in the procedure pertaining to the incorporation of such city. Also it is well settled that when the cre-

ation of a municipal corporation is authorized by statute, and a corporation has been organized under color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25. This assignment is therefore overruled.

■ Defendant also contends that the record shows that the city attempted to adopt the provisions of chapter 11, title 22, articles 1006 to 1017, both inclusive, Rev. St. of Texas, 1911, by ordinance, and that the ordinance is void for want of the enacting clause required by article 1012, Rev. St. 1925, article 818 of the codification of 1911. We overrule this assignment. The statute pertaining to this matter is article 1104, Rev. St. 1925, article 1016 of the 1911 codification. An examination of this statute shows that it does not require the city governing body to act by ordinance. This statute expressly provides that the governing body of the city may act by resolution in ordering the election, etc., therein provided for, and that: "Said body shall canvass and determine the results of such election; and, if a majority of the voters voting upon the question of the adoption of this chapter, at such election, shall vote to adopt the same, the result of the election shall by said governing body be entered upon their minutes, and thereupon all the terms hereof shall be applicable to and govern such city adopting the same."

The resolution or order of the governing body of the city canvassing the returns, and determining the result of the election in this case, is contained in the statement of facts. It is as follows:

"The election returns of the special election held within the corporate limits of the City of Olney, State of Texas, February 21st, A. D. 1919, were canvassed by the Council, said election having been held to determine whether or not the provisions of Chapter 11, Article 1006 to 1017 Revised Civil Statutes (Sayles) of the State of Texas, (1914) should be adopted by the qualified voters of the City of Olney.

"After the canvass and count of said vote was made, it appears to said City Council according to the report of J. T. Hunt and C. W. Dunn, judges of said election that the provisions of said Chapter and Articles as aforesaid were adopted by a vote of 52 for the adoption of the provisions of said Chapter and Articles, to 20 votes against.

"It is therefore ordered by the City Council of the City of Olney that the provisions of Chapter 11, Articles 1006 to 1017, Sayles Revised Civil Statutes (1914) of the State of Texas be and the same is hereby adopted to be of full force and effect hereafter within the corporate limits of the City of Olney."

The above order or resolution is not an ordinance and on its very face does not purport to be. It is an entry upon the minutes showing that the governing body of the city had canvassed the returns and determined the result of the election involved, and further showing such election to have resulted in favor of adopting the paving law. This is all that the statute requires. No ordinance is necessary.

For the reasons stated, we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals affirmed.