## GUTIERREZ v. URIBE.

### No. 13543.

Court of Civil Appeals of Texas. Fort Worth.

April 2, 1937.

Rehearing Denied April 23, 1937.

Edward A. Mullally and Pope & Pope, all of Laredo, for appellant.

Kazen & Kazen, Hicks, Dickson & Lange, and James M. Williamson, all of Laredo, for appellee.

SPEER, Justice.

This is a suit instituted in the district court of Zapata county, Tex., by Lucrecia Uribe, hereinafter called plaintiff, against

Manuel F. Gutierrez, hereinafter called defendant, for damages growing out of an alleged breach of promise to marry. Judgment for $1,500 was rendered for plaintiff.

Plaintiff alleged that in August, 1930, she and defendant mutually agreed to marry each other; that no definite time was at that time set for the consummation of the agreement, but that permission of plaintiff's parents was obtained to permit them to go out to public gatherings together, and to otherwise conduct themselves as engaged persons that they were; that continuously from the time they had thus agreed to marry, through the years succeeding, up to and including 1935, and to January 10, 1936, they often renewed their respective promises to marry each other; often within each of said years discussing between themselves the contemplated event, and their ability to procure and furnish a home in which to live; that relying upon said promises by defendant to marry her, she permitted defendant to have sexual intercourse with her during October of 1934, from which act she gave birth to a baby on July 22, 1935; that at all times from the date of their mutual agreement to marry until in December, 1935, defendant many times renewed his promises and expressed his love and devotion for plaintiff and treated her as his future wife and not until the last-mentioned date did he at any time indicate he did not have the bona fide intention to carry out his promises.

Further allegations were sufficient to entitle plaintiff to introduce proof of damages sustained.

Defendant filed general and special demurrers to plaintiff's petition; they were all presented and were overruled by the court; he further pleaded the general denial, and specially that any oral promise to marry made in 1930, and not so performed within twelve months thereafter, was barred by the statute of limitations within one year; that if any such oral promise by defendant was made at the time alleged by plaintiff with the intention of the parties, that it should be performed more than one year from the date thereof, it was void under the statute of frauds; further, such an oral contract if made in consideration of a future marriage was void because it was not made to appear that the agreement was in writing.

A jury trial was had, and at the conclusion of the testimony both parties requested peremptory instructions; that of defendant was refused, and the plaintiff's was given by the court; following that part of the charge by the court, that the jury should find for the plaintiff, additional instructions were given in regard to the measure of damages and what facts and circumstances could be considered by them in arriving at the amount of damages to be awarded, if any.

The defendant duly excepted to the charge of the court and has perfected his appeal by writ of error to the San Antonio Court of Civil Appeals. By order of the Supreme Court, the case has been transferred to us for determination.

The only assignment of error contained in defendant's brief challenges the act of the trial court in giving the peremptory instruction.

The proposed assignment is in this language:

"The court erred in determining as a matter of law from the evidence before him, based on the pleadings: (a) That there had been a definite mutual promise of marriage between the parties; (b) that there had been a breach thereof on the part of the defendant; and (c) that said breach was within the period where the action was not barred by limitation."

The subdivisions (a), (b), and (c) of the foregoing assignment cover the grounds of defense pleaded by defendant and relied upon here, and regardless of whether it can be considered by us as a proper assignment of error, the fact that the court gave a peremptory instruction for verdict would present fundamental error if improperly given, and we shall therefore discuss our views upon the matters presented.

It is contended by defendant that under the rule of law in this state when an instructed verdict is complained of, the only testimony before the court which can be considered is that adduced by the losing party. We cannot agree with defendant in this contention.

Defendant cites the case of Elliott v. Texas Pacific Coal & Oil Co. (Tex.Com. App.) 29 S.W.(2d) 982, 983, and several other cases of like kind in support of the principle announced by him. That case was one in which an instructed verdict was

rendered against Mrs. Elliott and from a judgment rendered thereon she appealed. That case was one in which the company sought to recover a debt and foreclosure of a lien on certain real estate for paving adjacent to the property, and Mrs. Elliott claimed the property was her homestead and that the lien asserted was therefore void. An instructed verdict for the company was rendered and judgment entered thereon. The Court of Civil Appeals [19 S.W.(2d) 442] affirmed the judgment and the Commission of Appeals commenting thereon said: "The effect of these holdings is to say that there is no evidence in the record which would in law sustain a fact finding that this property was a homestead. In testing the correctness of this holding we must view the facts in their most favorable light for the defendant."

To apply the rule above announced to the instant case is to say in arriving at whether or not (a) there had been a definite mutual promise of marriage between the parties, (b) that there had been a breach thereof by the defendant, and (c) that said breach, if any, was at a time when the action was not barred by limitation, "we must view the facts in the most favorable light for the defendant." But from this it does not follow that other testimony introduced by plaintiff, not in conflict with that of defendant, cannot be considered in determining if the peremptory charge was justified.

The parties to this suit are Mexicans or at least of Mexican descent, and for ought we know are American citizens, but this is immaterial to the issue here. As we view the record, there is no conflict in their testimony which affects the verdict and judgment rendered. They both testified in substance that among their people in the community in which they were reared there is a custom by which, when a couple becomes engaged to be married, or are betrothed to each other, it is necessary to procure the consent of the parents of the woman for the man to visit her in the home, and for the woman to be permitted to go out in public with the man; that this consent was procured in 1930 and they did thus hold themselves out to the public as being engaged to be married; that they both recognized this custom and considered they were engaged to become husband and wife; that they continued going together under these conditions from 1930 until early in 1935.

The defendant testified that in September, 1932, and while they were engaged to be married, he decided to test plaintiff's virtue, and induced her to permit him to have sexual intercourse with her; at which time he became convinced she was not a virgin; that if upon the test applied by him he had found she was a virgin, he would have carried out his promise to marry her; that he thereafter and prior to October, 1934, "used her" many times as he expressed it; that after he first "used her" in September, 1932, he decided she was not a suitable person to become his wife, and from that time on he did not intend to marry her. He further testified that he continued to go places with her as her "official sweetheart" until in 1935, but did not tell her nor any other person that they were not engaged, nor that he did not intend to keep his promise to marry her; that the term "official sweetheart" was known and understood among their people as persons engaged to be married. He said he knew that if she submitted to him it might affect her reputation in the community, but that because she was working in another town and he could not be with her he had feared she was not a Senorita and when he "used" her he had no more difficulty than with a public woman, and from this he concluded she was not a virgin. He testified that plaintiff did not want to marry in 1930; he further said Sheriff Sanchez came to him on December 18 or 20, 1935, and asked him what time he should set for the marriage and defendant replied: "I told him I did not have no date, and I was not getting married." That he did not tell Sanchez he would marry plaintiff on January 10, 1936.

The foregoing summary of defendant's testimony is given in its most favorable light in support of his contentions here; the record discloses all testimony was given in Spanish and repeated by an interpreter, and in many instances expressions were used that are more difficult to apply than statements made in customary English.

It would unnecessarily extend this opinion to set out the matters testified to by plaintiff, but we consider it strongly supports her allegations. She detailed, as did defendant, the customs of their people with reference to engagements to become married; the meaning of "official sweethearts" as that term is commonly known; that no time was set for their marriage

and because of the condition of her health in 1930 they did not marry; that continuously throughout the years between the time of their engagement until in 1935 they discussed their plans of marriage and agreed all along that as soon as he could acquire sufficient means to furnish a home they would marry; that in 1934 he brought plans of his proposed house and they discussed the location of the doors and windows; that defendant never at any time prior to January 10, 1936, said or did anything to apprise her or lead her to believe he would not keep his promise of marriage. She admitted illicit relation between her and defendant in October, 1934, from which she conceived and gave birth to a baby; but denied any other such act with defendant or any other person. She detailed in her own crude way why such a marriage would have been helpful to her financially, and how she had been humiliated and disgraced by defendant's wrongful conduct toward her, resulting in damages as prayed for.

As we view the testimony of defendant considered in the most favorable light to him, he presented no defense to plaintiff's cause of action. The only apparent conflict in their testimony seems to be the number of times, and the period covered, while he "had use" of her. She made a prima facie case without proof of the relation. The evidence tended to accentuate her damages, and for that reason was admissible. He admitted the illicit act in 1934, and the number of other times is immaterial to the case. Moreover, he never at any time communicated to her his desire to break the engagement prior to December 18, 1935, or perhaps January 10, 1936, about which two dates there is some conflict, but either date is well within the period of limitation. Nor could defendant by a secret evasion in his own mind terminate the "mutual agreement" of marriage by taking advantage of his own wrong.

By the testimony of both parties, it is clear there was a mutual agreement of marriage which refutes defendant's first contention.

By the admission of defendant that he told Sheriff Sanchez on December 20, 1935, he was making no date for the marriage since he was not getting married, he removes the contention that there was no breach, and that it was barred by limitation.

There is no merit in defendant's claim that because the agreement to marry was made in 1930 and it was not performed within a year, the action was barred by limitation when the suit was filed in January, 1936, especially in view of the uncontradicted testimony of plaintiff, corroborated by the endearing terms of the post card written by defendant to her on January 1, 1932, as well also the statements made by him to Sheriff Sanchez.

It is said in Tex.Jur., vol. 7, p. 271, § 5: "An understanding that the marriage was to take place when the defendant had time to erect a residence and provide the desired household conveniences is sufficiently definite." Huggins v. Carey (Tex.Civ.App.) 149 S.W. 390, reversed by Supreme Court on other grounds in 108 Tex. 358, 194 S.W. 133; Ferguson v. Jackson (Tex.Civ.App.) 248 S.W. 66, writ dismissed. In the same section of Texas Jurisprudence above cited, it is held: "Until the promise is broken, it is deemed a continuing promise." Clark v. Reese, 26 Tex.Civ.App. 619, 64 S.W. 783, writ of error dismissed.

The same rule obtains in other jurisdictions. It is said in Corpus Juris, vol. 9, p. 333: "A mere postponement of the marriage or failure to marry on the day set therefor, does not necessarily constitute a breach, as the contract is deemed to continue in force until one or the other of the parties, either by words or conduct, shows that he or she is unwilling to fulfill the contract. * * *"

A close examination of the record convinces us beyond question that plaintiff pleaded and proved a cause of action; and there is nothing in defendant's testimony to refute it. The trial court was fully justified in giving the peremptory instruction, and with proper limitations given in the charge as to the measure of damages the verdict and judgment were well within the law.

The assignment of error is overruled and the judgment of the trial court is affirmed.